Original

FILED

AUG 26 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Richard Selvis Jefferson

Plaintiff

Case: 1:08-cv-01473
Assigned To : Kennedy, Henry H.
Assign. Date : 8/26/2008
Description: FOIA/Privacy Act

v.

FEDERAL BUREAU OF PRISONS,
U.S. PROBATION OFFICE, et al.

Defendants

---

PETITION PURSUANT TO 28 U.S.C.
SECTION 1331
TITLE 5 SECTION 552a (a)(4), (e)(5), (g)(1)(C), and/or (g)(4), (g)(5);
THE FIFTH and EIGHTH AMENDMENT TO U.S. CONSTITUTION

---

--- C O V E R  P A G E ---

---

PETITION FILED IN THIS HONORABLE COURT FOR THE DISTRICT OF COLUMBIA, E. BARRETT PRETTYMAN, U.S. COURTHOUSE, 333 CONSTITUTION AVENUE, N.W., WASHINGTON, DC 20001

---

BY PLAINTIFF:

Richard S. Jefferson
Fed.Reg. # 14921-050
FEDERAL CORRECTIONAL
INSTITUTION - BECKLEY
P.O. BOX 350
BEAVER, WV 25813

FILED

AUG 14 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## PARTIES

A. Plaintiff:

The plaintiff, Richard Selvis Jefferson, acting Pro Se, is located at the Federal Correctional Institution - Beckley, P.O. Box 350, Beaver, West Virginia 25813, Federal Register Number 14921-050. File his complaint in lieu of allege violations of FOIA, 552a, the Fifth and Eighth Amendments to the U.S. Constitution, for maintaining inaccurate records/information causing an adverse decision in plaintiff's liberty interest.

B. Defendant 1:

The Federal Bureau of Prisons is located at 320 First Street N.W., Washington, DC 20534, and is responsible for the overall welfare of the plaintiff, creating Program Statements and Policies to oversee it's National Operations, maintaining records and information pertinent in calculating the plaintiff's prison credits, out-date in accordance with sentencing Court. The defendant "FBOP" did create a liberty interest by failing to maintain accurate records/information, and/or seek the easily accessible truth, and is being sued in it's official capacity.

C. Defendant 2:

The U.S. Probation Office is located at 20 Washington Place, Newark, New Jersey, 07103-3172, and was /is responsible for maintaining, or preparing plaintiff's "PSI" Report to assist the

the sentencing Court in it's sentence determination. The defendant "USPO" did create a liberty interest by failing to maintain accurate records/information, and/or seek the easily accessible truth, as to not cause the plaintiff an adverse determination and is being sued in it's official capacity.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Richard Selvis Jefferson, Plaintiff, | * | CIVIL NO. ____________ |
| v. | * | |
| FEDERAL BUREAU OF PRISONS, U.S. PROBATION OFFICE, et al., Defendants. | * | |

JURY TRIAL DEMANDED

COMPLAINT PURSUANT TO
28 U.S.C. Section 1331
Title 5 Section 552a (a)(4), (e)(5), (g)(1)(C), and/or (g)(4), (g)(5)
The Fifth and Eighth Amendment U.S. Constitution

**NOW COMES** plaintiff, Richard Selvis Jefferson, "hereinafter plaintiff," pro se, and is a federal prisoner, number 14921-050, currently located at Federal Correctional Institution-Beckley, P.O. Box 350, Beaver, West Virginia, 25813.

The plaintiff alleges that the Federal Bureau of Prisons and the U.S. Probation Office has maintained or utilized inaccurate records willfully and intentionally causing the proximate result of denying plaintiff's request for "Nunc Pro Tunc" which was an adverse determination in his immediate release.
In so doing, defendants have denied plaintiff's liberty interest, in violation of the Fifth and Eighth Amendment, and the Privacy Act. The plaintiff seeks compensation for the irreparable injury.

## VENUE

This complaint is properly brought in the District of Columbia, United States District Court, in which the defendant, the Federal Bureau of Prisons place of business, or in which the agency's records are situated. And to not cause multiplitious filing of civil actions surrounding the same complaint, the plaintiff has properly brought the New Jersey Federal Probation Office before this Court.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. Section 1331; Title 5 Section 552a (a)(4), (e)(5), (g)(1)(C); and/or (g)(4), (g)(5); the Fifth and Eighth Amendment U.S. Constitution; and any other local jurisdiction pendant to this action, which would be "Equitable" in nature.

## LIBERAL PLEADINGS and CONSTRUENCE DOCTRINE

As a pro se pleader, plaintiff invokes the full benefits and protections of the "liberal pleadings and construence doctrine" established in **Haines v. Kerner**, 404 U.S. 519 (1972); **Boag v. MacDougal**, 454 U.S. 364 (1982)(pro se pleadings must be liberally construed and treated; pro se pleaders are not to be held to the same standards as attorneys; leave to amend shall be freely and liberally given to pro se pleaders).

**BUREAU OF PRISONS**
**ADMINISTRATIVE REMEDY PROCESS**
**REQUESTS, BP-8's,9's,10's,11**

The plaintiff has exhausted his administrative remedies since he became aware of the problem, diligent in his efforts to have it rectified, as early as April 2003, throughout November 2006. The plaintiff was forced to resubmit his remedies after being transferred (retaliation due to complaints) from FCI Schuylkill, Pennsylvania; FCI Allenwood, Pennsylvania; FCI Gilmore, West Virginia; USP Big Sandy, Kentucky, finally exhausting; and making additional requests at FCI Beckley, West Virginia, discovering, for the first time, the vehicle of plaintiff's remedial denials were based on inaccurate record/information.

**I. THE FEDERAL BUREAU OF PRISONS MAINTAINED INACCURATE RECORDS/INFORMATION WILLFULLY AND INTENTIONALLY MAKING ADVERSE DECISION DENYING PLAINTIFF HIS LIBERTY INTEREST**

**Factual Background**:

**PART A THRU H**

1. On May 30, 1991, the plaintiff was arrested by New Jersey State authorities for Two-counts of Armed Robbery and One-count of Attempted Murder (i.e., related to federal offenses).

2. On the same date above, the federal authorities of New Jersey, lodged a detainer as to prosecute the plaintiff for Armed Bank Robbery (i.e., related to Attempted Murder -immediately after Bank Robbery).

3. On June 20, 1991, federal authorities borrowed plaintiff from state authorities via writ ad prosequendum. Sentenced the plaintiff to 210 months on 9/9/1992. The plaintiff was returned to state authorities and sentenced to 20 years to be ran concurrent to federal 210 months term on 4/28/1993.

**Federal Judge's Intention: PART B**

4. The New Jersey's District Court Judge stated at sentencing: "Counsel informs the Court, and the Court had been informed previously, that the Hudson County Prosecutor's Office will in all likelihood afford the two defendants a plea agreement, which will involve a recommendation for a term of imprisonment concurrent with the sentencing imposed for the instant offense by this Court."

5. The District Court Judge Continued: "In essence, this provides no additional sanction under the state system for the two armed robberies in Jersey City, as well as the attempted murder of the police officers. Therefore, the full responsibility for this sanction and punishment appears to rest with this Court.

6. The Judge lastly stated: "Under these circumstances, there appears to exist an overwhelming basis and justification for an upward departure pursuant to 4A1.3, adequacy of criminal history category, puruant to 5K2.0, more than one victim involved in the robbery, as well as relevant conduct pursuant to 1B1.3,

conduct not adequately considered in the guideline computation.

7. Furthermore, for the purpose of plaintiff's service of sentence, the District Court Judge stated, due to plaintiff's physical and mental abuse by New Jersey authorities, as a result of attempted murder of police officers, "Mr. Jefferson, the Court has imposed a substantial sentence upon you in this matter, but one thing is you will be moved, I would expect in the near future, out of the local jail. You will be put in a federal prison."

**State Judge's Intention**: **PART C**

8. The plaintiff was returned to New Jersey State, having first Soveriegn, and having the under standing that he would be returned to Federal Bureau of Prisons as intended by District Court Judge, as stated above.

9. On April 12, 1993, the plaintiff, Hudson County Prosecutor, and appointed defense counsel--signed plea agreement, stating: "20 years with 10 years parole ineligibility to run concurrent with each indictment and with federal time." (210 months)

10. On April 28, 1993, the State of New Jersey sentenced the plaintiff to three 20 years with a 10 year parole ineligibility period, to be ran concurrent to each other and to run concurrent with federal sentence.

11. However, by good faith mistake-state parties & the Superior Court Judge, Ms. Elain Davis, stated in Judgment in Commitment: "Defendant is to be delivered to the commissioner of the Department of Corrections." Such mistake went unnoticed by the parties, but yet it was clear, and until this day, that the state term was run concurrent to federal term.

12. On March 4, 2003, the plaintiff was released, on parole from East Jersey State Prison, Rahway, and delivered to U.S. Marshal Service, although plaintiff believed that he was going home to his family in Baltimore....via both state parole contract... New Jersey and Maryland contracts.

**Bureau of Prisons Designation FCI SCHUYLKILL:** **PART D**

13. On March 31, 2003, the plaintiff was delivered to FCI Schuylkill, Pennsylvania, but did not learn that his New Jersey State plea agreement to run it's term concurrent to federal term was RENDERED MEANINGLESS **until receiving BOP calculation data.**

14. On April 17, 2003, the plaintiff received the calculation that stated, inaccurately, that plaintiff's projected release date is August 24, 2018; expiration full term date is September 3, 2020.

15. The plaintiff immediately disputed the inaccurate calculations of BOP, filing a request for "Nunc Pro Tunc" (i.e., spanish

-then for now). In other words, the state term plaintiff served then, while in state custody, for federal term now, in order to satisfy, both, the intentions of state and federal Judges.

16. FCI Schuylkill advised, by letter, dated July 1, 2003, informing that District Court Judge, H. Lee Sarokin, retired from the bench into private practice, and that an assigned Judge will be reviewing the transcripts for clarification of the Court's intent at the time of sentencing. As soon as we receive the clarification, a decision will be made by this office and you will be notified.

17. The plaintiff filed a letter of recognition and for further consideration by the BOP staff. Letter Memorandum dated October 23, 2003, was received denying plaintiff request for "Nunc Pro Tunc" designation of State facility, as to satisfy both court's intention. The plaintiff was transferred to FCI Allenwood, Pennsylvania.

**Bureau of Prisons** **PART E**
**FCI ALLENWOOD:**

18. The plaintiff filed a BP-11 in response to Northeast Regional denial of federal credit while in State custody via Nunc Pro Tunc designation, dated November 7, 2003, with attachment.

19. Central Office BOP, Washinton, DC, responded, dated December 8, 2003, directing plaintiff to the Warden at FCI Allenwood. And again, the central Office responded, dated February 17, 2004, rejecting the plaintiff's BP-11 appeal, and directed

the plaintiff to submit his request to the Northeast Regional Office.

20. Rather than going back to same place that denied, the plaintiff started all over again, as advised by jail house lawyers. Dated December 30, 2003, the plaintiff filed a request with Records Department, Mr. Wilcome, requesting Nunc Pro Tunc.

21. On January 6, 2004, the Records Department denied request, stating: "Denied 10/14/03 inmate letter from USPO Office. This was the first time the plaintiff received this notification, not knowing that it is the seed of inaccurate records/information. The plaintiff never seen the letter, at this point. Not until 2007, which plaintiff will explain later.

22. On January 9, 2004, the plaintiff filed a BP-8 with M. Buck, Unit Counselor, requesting correction of calculation of federal term, with attachment. The Counselor responded: "Please see attached response dated 10-23-2003. Your Nunc Pro Tunc Designation request has been denied." This based on Northeast Regional denial.

23. The plaintiff notes: The Northeast Regional denial was based on United States Probation Office inaccurate records/information.

24. On January 13, 2004, the plaintiff filed a BP-9 with Warden S.A. Yates. He denied, identifying October 23, 2003, denial letter from Northeast Regional, BOP, attaching a copy of denial. The Warden's response was dated January 27, 2004.

**Bureau of Prisons FCI GILMER:** **PART F**

25. On March 16, 2005, the plaintiff revived his request for Nunc Pro Tunc designation credit. Inmate Records Department and Unit Manager, M.L. Veltri, denied request on same date stating: "See denial letter. This letter has been sent to inmate from Northeast Region addressing this issue"(i.e., 10/23/03).

26. The plaintiff was retaliated against, as he was at the prior institutions, now, redirecting his efforts to fighting for his immediate rights as a handicap, and being placed in Segregated Housing Unit (SHU) on various occasions. Thus, the plaintiff never completed his remedies at FCI Gilmer either, because he was transferred, as a result of the retaliation, and trumped-up disciplinary actions.

**Bureau of Prisons USP BIG SANDY:** **PART G**

27. On March 30, 2006, the plaintiff filed a BP-8 remedy, titling it "ILLEGAL INCARCERATION" advising that BOP has authority

to grant Nunc Pro Tunc designation of New Jersey State Prison for service of federal term. The plaintiff also demanded immediate release from incarceration, and compensation of up to $ 1,400,000.00 upon release.

28. The Records Department, and Unit Counselor, Roberts, denied, stating: "Your request for Nunc Pro Tunc designation is denied at the institution level." In pertinent part, also stated: "A letter from the U.S. District Court responded agrees with Consecutive interpretation of BOP, denied ISM. Denied at your other institutions per Region."

29. On April 15, 2006, the plaintiff filed a BP-9 with Warden at USP Big Sandy, sighting illegal incarceration, that it was not the intention of federal district court judge of New Jersey to run sentence consecutive to state term, and that state term was clearly ran concurrent to federal term. The plaintiff demanded again, immediate release and compensation of $ 1.4 million dollars.

30. On April 24, 2006, Warden, Suzanne R. Hastings, responded; and in pertinent part stated: "You were further sentenced in the state of New Jersey on a state parole violation to a term of 20 years to run concurrent with the federal sentence, imposed April 28, 1993...This matter was addressed with the Northeast Regional Office on April 25, 2003. A response was returned by the sentencing court on October 14, 2003. The

court's decision supports the denial of your nunc pro tunc designation based on a determination that the upward departure of 210 months sentence ordered was based on 150 months on count two, and sixty months on count four, to run consecutive as mandated by the statute.

31. On May 3, 2006, the plaintiff filed a BP-10 demanding immediate release and compensation as stated before, and it was received on May 19, 2006.

32. On June 15, 2006, Mid-Atlantic Regional Office responded stating: "Additional time is needed to respond..." Therefore, an extension was provided via BOP Program Statement.

33. On August 29, 2006, the Mid-Atlantic Regional Director, K.M. White, responded, in pertinent part: "A review of this matter reveals that this matter has already been addressed previously. Your request was reviewed and a decision had been made to run your sentence consecutive to your state sentence. Your appeal of the Warden's response is denied."

34. On September 15, 2006, the plaintiff filed a BP-11 remedy BOP Central Office, requesting nunc pro tunc designation, reminding of BOP's acknowledgment of state term ran concurrent to federal term. More importantly, the Plaintiff reiterated that the requests were denied based on U.S. Probation Office inaccurate response that triggered the Northeast Region inaccurate records/information.

35. On November 2, 2006, the BOP Central Office responded, in pertinent part: "Our review of this matter reveals both the Warden and Regional Director have adequately addressed your concerns. Bureau of Prisons' staff considered your request for nunc pro tunc designation 2003. The request was denied following a thorough review of all relevant factors, and you were advised of the denial by letter dated October 23, 2003. Your sentence has been calculated as required by judicial precedent, federal statute, and Program Statement 58880.28, Sentence Computation - CCCA. Your appeal is denied.

**Bureau of Prisons FCI BECKLEY:** **PART H**

36. The plaintiff was, for the first time, transferred upon his own request, from USP Big Sandy, and relocated to FCI Beckley West Virginia, under a false pretense that he would be transferred to a medical facility, finally, FCI Butna, North Carolina.

37. On February 26, 2007, the plaintiff revised his request for nunc pro tunc designation. Again, dated the same date above, the plaintiff received a response from Records Department, D. Trump, stating: "See attached (Northeast Regional response dated October, 23, 2003, and United States Probation Office response, for the first time) This issue has already been addressed & denied through the administrative remedy process. I also audited your file - it is correct as computed."

## II. PLAINTIFF'S DILIGENT EFFORTS TO ASCERTAIN THE TRUTH RELATIVE TO SENTENCING TRANSCRIPTS, ASSIGNED JUDGE TO REVIEW SAID DOCUMENTS, AND LETTER FROM DISTRICT COURT AS TO THE FINDINGS OF INTENT

**PART A & B**

38. The plaintiff was pretty much in the blind regarding his State and Federal Court Documents. He persisted in ascertaining the facts generating correspondence with federal and state officials.

**Federal Correspondence Relative To This Claim:** **PART A**

39. On March 16, 2006, the U.S. District Court of New Jersey, located at P.O. Box 419, Newark, New Jersey 07101, received plaintiff's letter dated March 5, 2006, requesting copies of his agreement, transcripts during sentencing. The response was that plaintiff's case file was in the National Archives and records Center in Lee's Summit, Missouri. The Clerk of Court gave instructions and cost to retrieve records/information.

40. On March 18, 2006, the plaintiff requested information of Federal Court and State Court to gain proper access. And on March 21, 2006, the plaintiff received the the New Jersey District Court adddress, located at 4015 Martin Luther King, Jr. Federal Bldg., 50 Walnut Street, Newark, New Jersey 07102.

41. On April 15, 2006, the plaintiff requested BOP staff copies of letter from U.S. District Court...agreement of consecutive

sentences...the name of judge and address that reviewed transcripts..the BOP's interpretation of denying nunc pro tunc...

42. On April 19, 2006, the Records Department responded in pertinent part: "a response from the U.S. District Court is generated from the region (Northeast Region, plaintiff believe) to the sentencing court...the Court responded to the Region of which filed, the Region will forward a letter of response to you (the plaintiff) in the event of a decision...you may review Program Statement (P.S.) 5880.28 regarding consecutive sentences...and lastly, decision of denying nunc pro tunc are based on decision from court not BOP, and/or 5880.28, Sentencing Comp. Manual Policy (**Barden**, 921 F.2d 476, 3rd Cir.)...the Record Department at USP Big Sandy would not provide an address for said judge..."

43. On June 1, 2006, the plaintiff forwarded a letter to New Jersey District Court filing a Freedom of Information request for his records, but there was no response thereto.

44. On November 7, 2006, the plaintiff forwarded another letter to Newark, New Jersey's District Court, requesting the name and location of assigned judge to my case, advising that sentencing Judge, H. Lee Sarokin retired from the bench.

45. On January 5, 2007, the plaintiff received notification from District Court, stating in pertinent part: "Letter from Richard Jefferson re: name of judge who replaced the Honorable

H.L. Sarokin as judge on his case. Reply: judge has not been assigned, if there is something that needs to be filed a judge will be assigned when documents are received."

**State Correspondence Relative To This Claim:** **PART B**

46. The plaintiff received correspondence from (original) the Office of the Hudson County Prosecutor, located at 595 Newark Avenue, Jersey City, New Jersey 07306, dated February 25, 2008, confirming as follows: "As you correctly stated the sentence on all three cases was 20 years with 10 years without parole concurrent with each other and concurrent with your federal sentence. Mr. Edward J. Defazio, Prosecutor was the original prosecutor who induced the state plea contract, defending to-date via the plaintiff's submission of Affidavit - Proof of Claims filed at that office to all parties, state and federal.

## III. THE UNITED STATES PROBATION OFFICE MAINTAINED INACCURATE RECORDS/INFORMATION WILLFULLY AND INTENTIONALLY CAUSING AN ADVERSE DECISION DENYING PLAINTIFF HIS LIBERTY INTEREST

47. The plaintiff had not received a copy of U.S. Probation Office letter dated October 14, 2003, until February 26, 2007, while at FCI Beckley. After carefully reviewing it's contents, the plaintiff noticed the inaccurate records/information maintained by the U.S. Probation Office, or at worst, fabrication of the facts.

48. U.S.P.O., Maurine Rush-Blossfeld, was the same officer that prepared plaintiff's Presentence Report for District Court Judge for sentencing purposes September 9, 1992.

49. In relevant part, stated: "you requested (BOP staff) clarification of the Court's intent at time of sentencing; you noted (BOP staff) that policy states that the concurrent (nunc pro tunc designation) should be made only when it is consistent with the intent of the sentencing court or the goals of the criminal justice system."

50. The U.S.P.O., further gave a brief criminal procedural background of the plaintiff, which was correct, except during the alleged writ of habeas corpus, the plaintiff was in federal custody for service of federal sentence.

51. The U.S. Probation Office admits to the New Jersey state term being ran concurrent to federal term in its letter to the BOP.

52. The U.S. Probation Office noted, as well as the BOP, that the federal Judgment and Commitment Order is silent regarding the impending state sentence, and reiterate that BOP interpret this (federal) sentence as consecutive.

53. The U.S. Probation Office stated: "In review of the presentence investigation, sentencing memorandum, and judicial comments at the time of sentencing, the U.S. Probation Office is in agreement with this (BOP) interpretation.

54. The U.S. Probation Office vaguely mentions that federal court afforded an upward departure delineated the aggravating factors of state offenses...acknowledging the likelihood plaintiff would be afforded a plea agreement with Hudson County authori-ties.

55. The Probation Office stated, in pertinent part: "Thus, the sentencing court determined that the upward departure of 210 months was based on 150 months on count two, and sixty months on count four, to run consecutive as mandated by the statute. In conclusion, it appears that the court's intention in this case was that the federal sentence should run consecutive to

adequately sanction the entirety of the offense conduct. I trust that this information will be helpful to you."

## IV. PLAINTIFF FILED CLAIM FOR DAMAGES PURSUANT TO FOIA TITLE 5, 552a (a)(4), (e)(5), (g)(1)(C), and/or (g)(4), (g)(5) THE FIFTH and EIGHTH AMENDMENT U.S. CONSTITUTION

56. On December 13, 2007, the plaintiff filed a Federal Tort Claim against the "BOP" alleging that plaintiff is illegally detained pursuant to inaccurate records/information, misapplication of statutes and policies. The plaintiff, in his claim, is seeking a $ 2,150,400,000.00 sum certain, that is negotiable. The plaintiff did attached exhibits in support of his claim.

57. On February 4, 2008, the plaintiff received a tactical response to delay BOP's response to his claim. The Northeast Regional Office responded as such, in pertinent part: "...tort claim that you submitted...is being forwarded to...Mid-Atlantic Regional Office, Annapolis Junction, MD 20701...as this claim does not fall within the jurisdiction of the...Northeast Regional Office.

58. The plaintiff notes: He forwarded, by certified mail, his tort claim to the Central Office of BOP, Washington, D.C., as stated in the caption of claim, and receipt # 7003-2260-0000-6782-6728 is attached thereto claim, dated December 19, 2007.

59. On March 6, 2008, the plaintiff received correspondence of his tort claim, as received by Beckley Consolidated Legal Center, 1600 Industrial Park Road, P.O. Box 1280, Beaver, West Virginia, 25813.

60. The BOP's Memrandum acknowledged receipt of plaintiff's administrative tort claim for personal injury at FCI Beckley beginning on March 4, 2003, through December 2007, which is inaccurate.

61. On June 30, 2008, the plaintiff received the Legal Center's response. In pertinent part stated: "Your Judgment and Commitment Order is silent with regards to concurrent or consecutive not-yet-imposed state sentences, therefore your federal sentence is consecutive. Program statement 5880.28 Sentence Computation Manual (CCCA of 1984), "...if the court is silent as to multiple terms of imprisonment which are imposed at different times without the judge specifying whether they are to run concurrently or consecutively, they will run consecutively..." Inaccurate!!!

62. The memorandum continued, in pertinent part: " By letter dated October 14, 2003, the U.S. Probation for the District of New Jersey noted its agreement with the manner in which the Bureau of Prisons has interpreted your sentence.

63. And lastly, BOP stated in pertinent part: "Additionally, you sought relief through the Administrative Remedy Process to obtain a Nunc Pro Tunc designation and/or Barden credit in

2003, and were denied at all three administrative remedy levels."

## V. CAUSE OF ACTION

**FEDERAL BUREAU OF PRISONS AND U.S. PROBATION OFFICE FAILED TO MAINTAIN A SYSTEM OF RECORDS AND/OR INFORMATION WITH ACCURACY TO ASSURE FAIRNESS IN THEIR DETERMINATIONS OF PLAINTIFF JEFFERSON'S LIBERTY INTEREST DENYING HIS NUNC PRO TUNC DESIGNATION ACTING IN A MANNER INTENTIONALLY/WILLFULLY WHERE THE TRUTH WAS RELATIVELY EASILY ASCERTAINABLE TO DEFENDANTS IN VIOLATION OF THE F.O.I.A., 5 Sec. 552a, (e)(5), (g)(1)(C), (g)(4) or (g)(5), ALSO OFFENDING THE U.S. CONSTITUTION, FIFTH AND EIGHTH AMENDMENT CLAUSES**

**FCI SCHUYLKILL:**

The plaintiff re-alleges, as stated through paragraphs 13-17:

The actions and inactions of BOP staff members were 1) inaccurate in calculating plaintiff's projected release date, reflecting August 24, 2018, or expiration full term of September 3, 2020; 2) that an assigned Judge was never appointed to review sentencing transcripts for clarification of sentencing Court's intention at time of sentencing; 3) denial letter/memorandum from Northeast Regional Office, dated 10/23/2003 was based on inaccurate records/information from U.S. Probation Office, and memorandum stated misapplication of statutes and Program Statement 5880.28 regarding application of consecutive sentence.

**FCI Allenwood:**

**The plaintiff re-alleges, as stated through paragraphs 18-24:** The actions and inactions of staff were as follows:

The Records Department denied relief based on 1) Northeast Region's inaccurate memorandum, which was generated from the inaccurate records/information of U.S. Probation Office; 2) Unit Counselor M. Buck, denied request based on inaccurate response from the Northeast Region 10/23/2003; 3) Warden Yates denied request based on Northeast Regional's reliance of U.S. Probation Office inaccurate records/information.

**FCI Gilmer:**

The plaintiff re-alleges, as stated through paragraphs 25, 26: The actions and inactions of staff were as follows:

Records Department and Unit Manager, M.L. Veltri, denied request for Barden credit based on 10/23/2003 inaccurate Regional response, which was generated from U.S.P.O.

**USP Big Sandy:**

The plaintiff re-alleges, as stated through paragraphs 27-35: The actions and inactions of staff were as follows:

A letter generated from the Northeast Regional Office dated 10/23/2003, was based on inaccurate records/information directed by the U.S. Probation Office; 2) Records Department and Unit Counselor Roberts, denied request for Barden credits based on inaccurate records/information generated from the U.S. District Court (which alleged assigned Judge made the findings) which,

in fact, is letter of inaccurate records/information from U.S. Probation Office; 3) Warden, Suzanne R. Hastings generated inaccurate records/information that plaintiff's state term in New Jersey consisted of a parole violation of 20 years ran concurrent to federal term of 210 months; it was also inaccurate records/information from the Warden, that a response was returned by the sentencing Court, when the sentencing Court made so such decision, but said decision was based on the inaccurate response from U.S.P.O.; 4) lastly, Warden Hastings relied on the misapplication, and meaning of statutes of consecutive term in federal Judgment and Commitment, which only applied to plaintiff's mandatory consecutive term of 60 months for the firearm offense, and 150 months for the Bank Robbery.

MidAtlantic Regional Director denied appeal based on the 1) inaccurate records/information that generated from U.S. Probation Office.

BOP Central Office denied plaintiff's appeal based on 1) the Warden's and Regional director's reliance of inaccurate records/information generated from Northeast Region dated on 10/23/2003, and as stated in U.S. Probation Office response 10/14/2003; 2) the Central Office misapplied judicial precedent and federal statute creating Program Statement 5880.28.

**FCI Beckley**:

The plaintiff re-alleges, as stated through paragraphs 36, 37: The actions and inactions of staff were as follows:

The Records Department, D. Trump, denied plaintiff's request to calculate his time correctly, relying on the inaccurate records/information generated from Regional Memorandum dated 10/23/2003, submitting the U.S. Probation Offices' Memorandum letter, which was the first time the plaintiff knew of, or review -ed inaccurate records/information generated from U.S. Probation Office.

**The Defendants Are In Violation As Follows**:

The actions and inactions of defendants, Federal Bureau Of Prisons, U.S. Probation Office, and et al., were all based on inaccurate records/information. Such actions were the willful intention of BOP Staff members and USPO, when not making independent findings of the truth, which was relatively easily ascertainable. Thus, the defendants reliance on other institutions denial of inaccurate records/information which generated from the Northeast Region's initial response, via the inaccurate records/information from the U.S. Probation Office, was the proximate causation to deny Nunc Pro Tunc designation, making an adverse decision in plaintiff's liberty interest, in violation of 5 U.S.C. Sec. 552a(e)(5), (g)(1)(C), (g)(4) or (g)(5); Fifth and Eighth Amendment to the U.S. Constitution, due process, cruel and unusual clauses.

## VI. CLAIMS FOR RELIEF

**A) Issue a declaratory judgment stating that:**

1) Defendant(s) Bureau of Prisons maintained/created inaccurate records/information willfully and intentionally where the truth was relatively easily ascertainable, relying on inaccurate record/ information generated from U.S. Probation Office, as their proximate causation to make an adverse decision in plaintiff's liberty interest.

2) Defendant(s) U.S. Probation Office created and maintained inaccurate records/information willfully and intentionally where the truth was relatively easily ascertainable, thus being their proximate causation to make an adverse decision in plaintiff's liberty interest.

**B) Issue an injunction ordering defendants to:**

1) Defendant(s) Bureau of Prisons must immediately release the plaintiff from bondage of inaccurate records/information.

2) Defendant(s) U.S. Probation Office must concede to the truth of Sentencing Court's intent as clearly stated in sentencing transcripts, as to redirect the Bureau of Prisons to concede that sentencing Court envisioned allowing the state term of 20 years to be ran concurrent to federal term of 210 months.

**C) Award compensatory damages in the following amounts:**

1) Bureau of Prisons: $ 30,000,000.00

2) U.S. Probation Office $ 20,000,000.00

Totaling: $ 50,000,000.00

**D) Award punitive damages in the following amounts:**

1) Bureau of Prisons: $ 1,050,000,000.00

2) U.S. Probation Office $ 1,050,000,000.00

Totaling: $ 2,100,000,000.00

**E) Negotiable option in the following amounts:**

1) Bureau of Prisons: $10,000,000.00

2) U.S. Probation Office: 10,000,000.00

Totaling: $ 20,000,000.00

**F) Grant such other relief as it may appear that plaintiff is entitled.**

The plaintiff based his award damages on the case of **Trezevant v. City of Tampa**, 741 F.2d 336 (1984)($ 25,000.00 award for 23 minutes of unconstitutionally deprivation of Trezevant's liberty interest, and mental/physical anguish suffered during entire episode).

Dated: August 7, 2008

Richard Selvis Jefferson
Fed.Reg. # 14921-050
FEDERAL CORRECTIONAL
INSTITUTION - BECKLEY
P.O. BOX 350
Beaver, WV 25813

1
08-1473
HHK

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**
Richard S. Jefferson

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

PRO SE PR

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
# 14921-050

**DEFENDANTS**
Federal Bureau of Prisons, et al.,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ______
**(IN U.S. PLAINTIFF CASES ONLY)**

NOTE: ... HE

Case: 1:08-cv-01473
Assigned To : Kennedy, Henry H.
Assign. Date : 8/26/2008
Description: FOIA/Privacy Act

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

### ☐ A. *Antitrust*
- ☐ 410 Antitrust

### ☐ B. *Personal Injury/ Malpractice*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ☐ C. *Administrative Agency Review*
- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. *Temporary Restraining Order/Preliminary Injunction*
**Any nature of suit from any category may be selected for this category of case assignment.**

***(If Antitrust, then A governs)***

### ☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Immigration**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus- Alien Detainee
- ☐ 465 Other Immigration Actions

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☒ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

4

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | X I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

X 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ Multi district Litigation ☐ 7Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
5 USC 552a (Privacy Act)

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 **DEMAND $** Check YES only if demanded in complaint **JURY DEMAND:** ☐ YES X NO

**VIII. RELATED CASE(S) IF ANY** (See instruction) ☐ YES X NO If yes, please complete related case form.

**DATE** 8/26/08 **SIGNATURE OF ATTORNEY OF RECORD** NCD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

A1

PLEA FORM

DEFENDANT'S NAME Richard S. Jefferson before JUDGE Davis County Hudson

1. List the charges to which you are pleading guilty:

| Ind./Acc./Compl.Num. | Count | Nature of Offense | Degree | | STATUTORY MAXIMUM Time | Fine | VCCB Penalty* |
|---|---|---|---|---|---|---|---|
| 1577-08-91 | 1st | Armed Robbery | 1st | MAX | 20 yrs | 100,000 | 1 3 0 |
| 1702-09-91 | 1st | Armed Robbery | 1st | MAX | 20 yrs | 100,000 | 1 2000 |
| 0507-03-92 | 1st | Att. Murder | 1st | MAX | 20 yrs | 100,000 | 1 5000 |
| | | | | MAX | | | |
| | | | | MAX | | | |

Your total exposure as a result of this plea is: TOTAL 60 yrs 30000 32000

PLEASE CIRCLE APPROPRIATE ANSWER

2. a. Did you commit the offense(s) to which you are pleading guilty? [YES] [NO]
   b. Do you understand that before the judge can find you guilty, you will have to tell the judge what you did that makes you guilty of the particular offense(s)? [YES] [NO]

3. Do you understand what the charges mean? [YES] [NO]

4. Do you understand that by pleading guilty you are giving up certain rights? Among them are:
   a. The right to a jury trial in which the State must prove your guilt beyond a reasonable doubt? [YES] [NO]
   b. The right to remain silent? [YES] [NO]
   c. The right to confront the witnesses against you? [YES] [NO]

5. Do you understand that if you plead guilty,
   a. You will have a criminal record? [YES] [NO]
   b. Unless the plea agreement provides otherwise, you could be sentenced to serve the maximum time in confinement, to pay the maximum fine and to pay the maximum VCCB penalty? [YES] [NO]
   c. You must pay a minimum Violent Crimes Compensation penalty of $30 for each count to which you plead guilty? ($25 if crime occurred before 1-9-86) [YES] [NO]

6. Do you understand that the court could in its discretion impose a minimum time in confinement to be served before you become eligible for parole, which period could be as long as one half of the period of the custodial sentence imposed? [YES] [NO]

7. Did you enter a plea of guilty to any charges that require a mandatory period of parole ineligibility or a mandatory extended term? [YES] [NO]
   a. If you are pleading guilty to such a charge, the minimum mandatory period of parole ineligibility is 10 years and Ø months (fill in number of years/months) and the maximum period of parole ineligibility can be ____ years and ____ months (fill in number of years/months) and this period cannot be reduced by good time, work, or minimum custody credits.

8. Are you pleading guilty to a crime that contains a presumption of imprisonment which means that it is almost certain that you will go to state prison? [YES] [NO]

9. Are you presently on probation or parole? [YES] [NO]
   a. Do you realize that a guilty plea may result in a violation of your probation or parole? [YES] [NO] [N/A]

Defendant's Initials RJ

*Violent Crimes Compensation Board Penalty

  

10. Are you presently serving a custodial sentence on another charge? [YES] [NO]
   a. Do you understand that a guilty plea may affect your parole eligibility? [YES] [NO] [N/A]

11. Do you understand that if you have plead guilty to, or have been found guilty on other charges, or are presently serving a custodial term and the plea agreement is silent on the issue the court may require that all sentences be made to run consecutively? [YES] [NO] [NA]

12. List any charges the prosecutor has agreed to recommend for dismissal:

| Ind./Acc./Compl.# | Count | Nature of Offense and Degree |
|---|---|---|
| 1577-08-91 | | Dismissed the rest of indictment |
| 1762-08-91 | | " " " " " |
| 0567-03-92 | | " " " " " |
| | | |

13. Specify any sentence the Prosecutor has agreed to recommend.
20 years with 10 yrs parole ineligibility to run concurrent with each indictment and with federal time. (210 Months)

14. Has the Prosecutor promised that he or she will NOT:
   a. Speak at sentencing? [YES] [NO]
   b. Seek an extended term of confinement? [YES] [NO]
   c. Seek a stipulation of parole ineligiblity? [YES] [NO]

15. Are you aware that you may be ordered to pay restitution? [YES] [NO] [N/A]

16. Do you understand that if you are a public office holder or employee, you can be required to forfeit your office or job by virtue of your plea of guilty? [YES] [NO] [N/A]

17. Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty? [YES] [NO] [N/A]

18. Have you discussed with your attorney the legal doctrine of merger? [YES] [NO] [N/A]

19. Are you giving up your right at sentence to argue that there are charges you pleaded guilty to for which you cannot be given a separate sentence? [YES] [NO] [N/A]

20. List any other promises or representations that have been made by you, the prosecutor, your defense attorney, or anyone else as a part of this plea of guilty:

Defendant's Initials [signature]

 

21. Have any promises other than those mentioned on this form, or any threats, been made in order to cause you to plead guilty? [YES] [NO]

22. a. Do you understand that the judge is not bound by any promises or recommendations of the prosecutor and that the judge has the right to reject the plea before sentencing you and the right to impose a more severe sentence? [YES] [NO]
    b. Do you understand that if the judge decides to impose a more severe sentence than recommended by the prosecutor, that you may take back your plea? [YES] [NO]
    c. Do you understand that if you are permitted to take back your plea of guilty because of the judge's sentence, that anything you say in furtherance of the guilty plea cannot be used against you at trial? [YES] [NO]

23. Are you satisfied with the advice you have received from your lawyer? [YES] [NO]

24. Do you have any questions at all concerning this plea? [YES] [NO]

DATE: 4/12/93 ________ Defendant

DEFENSE ATTORNEY ________

PROSECUTOR ________

[ ] This plea is the result of the judge's conditional indications of the maximum sentence he/she would impose independent of the prosecutor's recommendation. Accordingly, the "Supplemental Plea Form for Non-Negotiated Pleas" has been completed.

(1) (3)

Pros. File No. 91-1668 Steno: On Tape

**State of New Jersey**

v.

Richard Jefferson

Defendant (Specify Complete Name)

**New Jersey Superior Court**
Hudson County
**Law Division - Criminal**

- [x] Judgment of Conviction
- [ ] Change of Judgment
- [x] Order for Commitment
- [ ] Indictment/Accusation Dismissed
- [ ] Judgment of Acquittal

3-18-66 DATE OF BIRTH
752470B S.B.I. #
5-30-91 DATE OF ARREST
8-8-91 DATE IND / ACC FILED
9-4-91 DATE OF ORIGINAL PLEA
[x] NOT GUILTY [ ] GUILTY ORIGINAL PLEA

ADJUDICATION BY — DATE
[x] GUILTY PLEA 4-12-93
[ ] JURY TRIAL
[ ] NON-JURY TRIAL
[ ] Dismissed/Acquitted

**ORIGINAL CHARGES**

(3)(2) —

| IND / ACC No. | Count | Description | Degree | Statute |
|---|---|---|---|---|
| 1577-8-91 | 1 | Armed Robbery | | 2C:15-1 |
| " | 2 | Unl. Poss Wpn | | 2C:39.5b |
| " | 3 | P. Wpn Unl. Purp | | 2C:39.4a |

**FINAL CHARGES**

| Count | Description | Degree | Statute |
|---|---|---|---|
| 1 | Armed Robbery | | 2C:15-1 |

It is, therefore, on April 28, 199 **ORDERED** and **ADJUDGED** that the defendant is sentenced as follows:

Count 1

DEFT IS TO BE DELIVERED TO THE COMMISSIONER OF THE DEPT OF CORRECTIONS FOR A TERM OF TWENTY (20) years with a 10 year parole ineligibility period. SENTENCE TO RUN CONCURRENT WITH SENTENCES ON Indt. 507-03-92 1702-08-91 and Federal Sentence.

Dismissed: Counts 2,3.

[ ] It is further **ORDERED** that the sheriff deliver the defendant to the appropriate correctional authority.

[x] Defendant is to receive credit for time spent in custody (R. 3:21-8). 470 TOTAL NO. DAYS 5-30-91 9-11-92 DATES (From / To)

[ ] Defendant is to receive gap time credit for time spent in custody (N.J.S.A. 2C:44-5b(2)). 231 TOTAL NO. DAYS 9-11-92 4-30-93 DATES (From / To)

Total Custodial Term twenty years with 10 PI above Institution Total Probation Term

COPIES TO: CHIEF PROBATION OFFICER STATE POLICE AOC CRIMINAL PRACTICE DIVISION DEPT OF CORRECTIONS or COUNTY PENAL INSTITUTION PROSECUTOR, ATTORNEY, ROOM 801, ROOM 805, JUDGE'S FILE, INDICTMENT JACKET

CP0188 (Rev. 1/83) Replaces LR-34 & LR-35 CDR 4 (Rev 1-83)



State of New Jersey v. Richard S. Jefferson SBI # 752470B IND ACC # 1577-8-01

Total FINE $

Total RESTITUTION $

If the offense occurred on or after December 23, 1991 an assessment of $50 is imposed on each count on which the defendant was convicted unless the box below indicates a higher assessment pursuant to N.J.S.A 2C:43-3.1. (Assessment is $30 if offense is on or after January 9, 1986 but before December 23, 1991, unless a higher penalty is noted. Assessment is $25 if offense is before January 9, 1986.)

[X] Assessment imposed on count(s) 1 is $ 30.00 each.

Total VCCB Assessment $ 30.00

[ ] Installment payments are due at the rate of $ ____ per ____, beginning ____ (DATE)

If any of the offenses occurred on or after July 9, 1987 and is for a violation of Chapter 35 or 36 of Title 2C

1) A mandatory Drug Enforcement and Demand Reduction (D.E.D.R.) penalty is imposed for each count. (Write in # times for each.)

___ 1st Degree @ $3000 ___ 4th Degree @ $750
___ 2nd Degree @ $2000 ___ Disorderly Persons or Petty
___ 3rd Degree @ $1000 ___ Disorderly Persons @ $500

Total D.E.D.R. Penalty $

[ ] Court further ORDERS that collection of the D.E.D.R. penalty be suspended upon defendant's entry into a residential drug program for the term of the program.

2) A forensic laboratory fee of $50 per offense is ORDERED ___ Offenses @ $50

Total LAB FEE $

3) Name of Drugs Involved

4) A mandatory driver's license suspension of ____ months is ORDERED.

The suspension shall begin today, ____ and end ____

Driver's License Number

(IF THE COURT IS UNABLE TO COLLECT THE LICENSE, PLEASE ALSO COMPLETE THE FOLLOWING.)

Defendant's Address 2718 Fenwick Av Baltimore MD

Eye Color Brown Sex Male Date of Birth 3-18-66

[ ] The defendant is the holder of an out-of-state driver's license from the following jurisdiction ____ Driver's license # ____

[ ] Your non-resident driving privileges are hereby revoked for ____ Months.

If the offense occurred on or after February 1, 1993 and this sentence is to probation or to a State Correctional facility, a transaction fee of up to $1.00 is ordered for each occasion when a payment or installment payment is made. (P.L. 1993, c. 168)

| NAME (Court Clerk or Person who prepares this form) | TELEPHONE NUMBER | NAME (Attorney for Defendant at Sentencing) | PROSECUTOR: at Sentencing |
|---|---|---|---|
| Clare Esposito | 201 795 6669 | E. Cruz ESQ | D. Rostogi |

## STATEMENT OF REASONS

AGGRAVATING FACTORS

2. The gravity and seriousness of harm inflicted on the victim, including whether or not the deft knew or reasonsbly should have known that the victim of the offense was particularly vulverable or incaptabe of resistance due to advanced age, disability, ill health or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance.
3. The risk that the deft will commit another offense.
9 The need for deterring the deft and others from violating the law.
11 The imposiition of a fine, penalty or order fro restitution without also imposing a term of imprisonment would be perceived by the deft or others merely as part of the cost of doing business.

COURT ALSO INCORPORATES ALL OTHER REASONS STATED ORALLY ON THE RECORD FOR IMPOSING THE SENTENCE HEREIN.

| JUDGE (Name) | JUDGE (Signature) | DATE |
|---|---|---|
| ELAINE DAVIS JSC | [signature] | |

Administrative Office of the Courts
State Bureau of Identification

CP0165 (Rev. 1-93) Replaces LR-34 & LR-35
CDR 4 (Rev. 1/93)

COPIES TO: CHIEF PROBATION OFFICER, STATE POLICE, AOC CRIMINAL PRACTICE DIVISION, DEPT OF CORRECTIONS or COUNTY PENAL INSTITUTION
PROSECUTOR, ATTORNEY, ROOM 801, ROOM 905, JUDGE'S FILE, INDICTMENT JACKET

(2) (5)

Pros. File No. Sten On Tape

**State of New Jersey**

v.

Richard Jefferson

Defendant (Specify Complete Name)

**New Jersey Superior Court**

Hudson County

**Law Division - Criminal**

- [x] Judgment of Conviction
- [ ] Change of Judgment
- [x] Order for Commitment
- [ ] Indictment/Accusation Dismissed
- [ ] Judgment of Acquittal

| | |
|---|---|
| 3-18-66 | DATE OF BIRTH |
| 752470B | S.B.I. # |
| 5-30-91 | DATE OF ARREST |
| 8-29-91 | DATE IND / ACC FILED |
| 9-12-91 | DATE OF ORIGINAL PLEA |
| [x] NOT GUILTY [ ] GUILTY | ORIGINAL PLEA |

| ADJUDICATION BY: | DATE |
|---|---|
| [x] GUILTY PLEA | 4-12-93 |
| [ ] JURY TRIAL | |
| [ ] NON-JURY TRIAL | |
| [ ] Dismissed/Acquitted | |

**ORIGINAL CHARGES**

| IND / ACC No. | Count | Description | Degree | Statute |
|---|---|---|---|---|
| (3)(1)— 1702-08-91 | 1 | Armed Robbery | | 2C:15-1 |
| " | 2&3 | Agg. Asslt | | 2C:12.1b |
| " | 4 | Agg. Asslt | | 2C:12-1b |
| " | 5 | Agg. Asslt | | 2C:12.1b |
| " | 6&7 | Agg. Asslt | | 2C:12.1b |
| " | 8 | Unl. P. Wpn | | 2C:39.5b |
| " | 9 | P. Wpn Unl. Purp | | 2C:39.4a |

**FINAL CHARGES**

| Count | Description | Degree | Statute |
|---|---|---|---|
| 1 | Armed Robbery | | 2C:15-1 |

It is, therefore, on April 28, 199[illegible] **ORDERED** and **ADJUDGED** that the defendant is sentenced as follows:

Count 1

DEFT IS TO BE DELIVERED T[illegible] OF THE DEPT OF CORRECTIONS FOR A TERM OF TWENTY (20) [illegible]ear parole ineligibility period. SENTENCE TO RUN [illegible]NTENCES ON Indt. 1577-08-91 [illegible] and Federal Sentence.

Dismissed: Counts 2.3.4.5.6.7.8.9

- [ ] It is further **ORDERED** that the sheriff deliver the defendant to the appropriate correctional authority.
- [x] Defendant is to receive credit for time spent in custody (R. 3:21-8). 470 TOTAL NO DAYS; 5-30-91 9-11-92 DATES (From / To)
- [ ] Defendant is to receive gap time credit for time spent in custody (N.J.S.A. 2C:44-5b(2)). 231 TOTAL NO DAYS; 9-11-92 4-30-93 DATES (From / To)

Total Custodial Term above Institution ________ Total Probation Term ________

CP8198 (Rev 1/93) Replaces LR-34 & LR-35 CDR 4 (Rev 1/93)

COPIES TO: CHIEF PROBATION OFFICER STATE POLICE AOC CRIMINAL PRACTICE DIVISION DEPT OF CORRECTIONS or COUNTY PENAL INSTITUTION PROSECUTOR, ATTORNEY, ROOM 201, ROOM 805, JUDGE'S FILE, INDICTMENT JACKET

-6

State of New Jersey v. Richard S. Jefferson SBI # 752470B IND ACC # 1702-8-91

Total FINE $

Total RESTITUTION $

If the offense occurred on or after December 23, 1991, an assessment of $50 is imposed on each count on which the defendant was convicted unless the box below indicates a higher assessment pursuant to N.J.S.A 2C:43-3.1. (Assessment is $30 if offense is on or after January 9, 1986 but before December 23, 1991, unless a higher penalty is noted. Assessment is $25 if offense is before January 9, 1986.)

[X] Assessment imposed on count(s) 1 is $ 30.00 each.

Total VCCB Assessment $ 30.00

[ ] Installment payments are due at the rate of $ ______ per ______, beginning ______ (DATE)

If any of the offenses occurred on or after July 9, 1987, and is for a violation of Chapter 35 or 36 of Title 2C:

1) A mandatory Drug Enforcement and Demand Reduction (D.E.D.R.) penalty is imposed for each count. (Write in # times for each.)

____ 1st Degree @ $3000 ____ 4th Degree @ $750
____ 2nd Degree @ $2000 ____ Disorderly Persons or Petty
____ 3rd Degree @ $1000 Disorderly Persons @ $500

Total D.E.D.R. Penalty $

[ ] Court further ORDERS that collection of the D.E.D.R. penalty be suspended upon defendant's entry into a residential drug program for the term of the program

2) A forensic laboratory fee of $50 per offense is ORDERED ______ Offenses @ $50

Total LAB FEE $

3) Name of Drugs Involved

4) A mandatory driver's license suspension of ______ months is ORDERED

The suspension shall begin today, ______ and end ______

Driver's License Number

(IF THE COURT IS UNABLE TO COLLECT THE LICENSE, PLEASE ALSO COMPLETE THE FOLLOWING.)

Defendant's Address 2718 Fenwick Av Baltimore MD

Eye Color Brown Sex Male Date of Birth 3-18-66

[ ] The defendant is the holder of an out-of-state driver's license from the following jurisdiction ______ Driver's license # ______

[ ] Your non-resident driving privileges are hereby revoked for ______ Months.

If the offense occurred on or after February 1, 1993 and the sentence is to probation or to a State Correctional facility, a transaction fee of up to $1.00 is ordered for each occasion when a payment or installment payment is made. (P.L. 1992, c. 169)

NAME (Court Clerk or Person who prepares this form): Clare Esposito

TELEPHONE NUMBER: 201 795 6669

NAME (Attorney for Defendant at Sentencing): E. Cruz ESQ

PROSECUTOR at Sentencing: D. Rostogi

## STATEMENT OF REASONS

AGGRAVATING FACTORS

2. The gravity and seriousness of harm inflicted on the victim, including whether or not the deft knew or reasonably should have known that the victim of the offense was particularly vulverable or incaptabe of resistance due to advanced age, disability, ill health or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance.
3. The risk that the deft will commit another offense.
9. The need for deterring the deft and others from violating the law.
11. The imposiition of a fine, penalty or order fro restitution without also imposing a term of imprisonment would be perceived by the deft or others merely as part of the cost of doing business.

COURT ALSO INCORPORATES ALL OTHER REASONS STATED ORALLY ON THE RECORD FOR IMPOSING THE SENTENCE HEREIN.

JUDGE (Name): ELAINE DAVIS JSC

JUDGE (Signature): [signature]

DATE

Administrative Office of the Courts
State Bureau of Identification

CP0106 (Rev. 1/93) Replaces LR-34 & LR-35
CDR 4 (Rev. 1/93)

COPIES TO: CHIEF PROBATION OFFICER, STATE POLICE, AOC CRIMINAL PRACTICE DIVISION, DEPT OF CORRECTIONS or COUNTY PENAL INSTITUTION
PROSECUTOR, ATTORNEY, ROOM 801, ROOM 805, JUDGE'S FILE, INDICTMENT JACKET

(3) (7)

Pros. File No. 91-1670 Steno: On Tape

State of New Jersey

v.

Richard Jefferson

Defendant (Specify Complete Name)

New Jersey Superior Court
Hudson County
Law Division - Criminal

☒ Judgment of Conviction
☐ Change of Judgment
☒ Order for Commitment
☐ Indictment/Accusation Dismissed
☐ Judgment of Acquittal

3-18-66 DATE OF BIRTH
752470B S.B.I. #
5-30-91 DATE OF ARREST
3-26-92 DATE IND / ACC FILED
4-12-93 DATE OF ORIGINAL PLEA
☐ NOT GUILTY ☒ GUILTY ORIGINAL PLEA

ADJUDICATION BY: DATE
☒ GUILTY PLEA 4-12-93
☐ JURY TRIAL
☐ NON-JURY TRIAL
☐ Dismissed/Acquitted

ORIGINAL CHARGES

| IND / ACC. No. | Count | Offense | Degree | Statute |
|---|---|---|---|---|
| (2) (1) - 507-03-92 | 1 | Att. Murder | | 2C:5-1,11-3 |
| " | 2,3,4,5 | Agg. Aslt | | 2C:12.1b |
| " | 6 | Terr. Threats | | 2C:12.3a |
| " | 7&9 | P. Wpn Unl. Purp | | 2C:39.4a |
| " | 8 | Unl. Poss Wpn | | 2C:39.5b |
| " | 10 | P. Proh Wpn | | 2C:39.3b |
| " | 11 | Rec. Stln Prop | | 2C:20-7 |

FINAL CHARGES

| Count | Offense | Degree | Statute |
|---|---|---|---|
| 1 | Att. Murder | | 2C:5-1,11-3 |

It is, therefore, on April 28, 1993 ORDERED and ADJUDGED that the defendant is sentenced as follows:

Count 1

DEFT IS TO BE DELIVERED TO THE COMMISSIONER OF THE DEPT OF CORRECTIONS FOR A TERM OF TWENTY (20) years with a 10 year parole ineligibility period. SENTENCE TO RUN CONCURRENT WITH SENTENCES ON Indt. 1577-8-91 & 1702-8-91 and Federal Sentence. ☆

Dismissed: 2,3,4,5,6,7,8,9,10,11

☐ It is further ORDERED that the sheriff deliver the defendant to the appropriate correctional authority.

☒ Defendant is to receive credit for time spent in custody (R. 3:21-8). 470 TOTAL NO. DAYS 5-30-91 9-11-92 DATES (From / To)

☐ Defendant is to receive gap time credit for time spent in custody (N.J.S.A. 2C:44-5b(2)). 231 TOTAL NO. DAYS 9-11-92 4-30-93 DATES (From / To)

Total Custodial Term Twenty years with 10 year PI above Institution Total Probation Term

COPIES TO: CHIEF PROBATION OFFICER, STATE POLICE, AOC CRIMINAL PRACTICE DIVISION, DEPT OF CORRECTIONS or COUNTY PENAL INSTITUTION, PROSECUTOR, ATTORNEY, ROOM 801, ROOM 808, JUDGE'S FILE, INDICTMENT JACKET

State of New Jersey v. Richard S. Jefferson # 752470B IND. ACC. # 507-3-92

Total FINE $ ____

Total RESTITUTION $ ____

If the offense occurred on or after December 23, 1991 an assessment of $50 is imposed on each count on which the defendant was convicted unless the box below indicates a higher assessment pursuant to N.J.S.A. 2C:43-3.1. (Assessment is $30 if offense is on or after January 9, 1986 but before December 23, 1991, unless a higher penalty is noted. Assessment is $25 if offense is before January 9, 1986.)

[X] Assessment imposed on count(s) 1 is $ 30.00 each.

Total VCCB Assessment $ 30.00

[ ] Installment payments are due at the rate of $ ____ per ____, beginning ____ (DATE)

If any of the offenses occurred on or after July 9, 1987, and is for a violation of Chapter 35 or 36 of Title 2C:

1) A mandatory Drug Enforcement and Demand Reduction (D.E.D.R.) penalty is imposed for each count. (Write in # times for each.)

___ 1st Degree @ $3000 ___ 4th Degree @ $750
___ 2nd Degree @ $2000 ___ Disorderly Persons or Petty
___ 3rd Degree @ $1000 Disorderly Persons @ $500

Total D.E.D.R. Penalty $ ____

[ ] Court further ORDERS that collection of the D.E.D.R. penalty be suspended upon defendant's entry into a residential drug program for the term of the program.

2) A forensic laboratory fee of $50 per offense is ORDERED ____ Offenses @ $50.

Total LAB FEE $ ____

3) Name of Drugs Involved ____

4) A mandatory driver's license suspension of ____ months is ORDERED. The suspension shall begin today, ____ and end ____

Driver's License Number ____

(IF THE COURT IS UNABLE TO COLLECT THE LICENSE, PLEASE ALSO COMPLETE THE FOLLOWING.)

Defendant's Address 2718 Fenwick Av Baltimore MD

Eye Color Brown Sex Male Date of Birth 3-18-66

[ ] The defendant is the holder of an out-of-state driver's license from the following jurisdiction ____ Driver's license # ____

[ ] Your non-resident driving privileges are hereby revoked for ____ Months.

If the offense occurred on or after February 1, 1993 and the sentence is to probation or to a State Correctional facility, a transaction fee of up to $1.00 is ordered for each occasion when a payment or installment payment is made. (P.L. 1992, c. 169)

| NAME (Court Clerk or Person who prepared this form) | TELEPHONE NUMBER | NAME (Attorney for Defendant at Sentencing) | PROSECUTOR at Sentencing |
|---|---|---|---|
| Clare Esposito | 201 795 6669 | E. Cruz ESQ | D. Rostogi |

## STATEMENT OF REASONS

AGGRAVATING FACTORS

2. The gravity and seriousness of harm inflicted on the victim, including whether or not the deft knew or reasonably should have known that the victim of the offense was particularly vulverable or incaptabe of resistance due to advanced age, disability, ill health or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance.
3. The risk that the deft will commit another offense.
9 The need for deterring the deft and others from violating the law.
11 The imposition of a fine, penalty or order fro restitution without also imposing a term of imprisonment would be perceived by the deft or others merely as part of the cost of doing business.

COURT ALSO INCORPORATES ALL OTHER REASONS STATED ORALLY ON THE RECORD FOR IMPOSING THE SENTENCE HEREIN.

| JUDGE (Name) | JUDGE Signature | DATE |
|---|---|---|
| ELAINE DAVIS JSC | [signature] | |

Administrative Office of the Courts
State Bureau of Identification

CP9105 (Rev 1/93) Supersedes LR-36 & LR-38

COPIES TO: CHIEF PROBATION OFFICER, STATE POLICE, AOC CRIMINAL PRACTICE DIVISION, DEPT OF CORRECTIONS or COUNTY PENAL INSTITUTION

PROSECUTOR, ATTORNEY, ROOM 401, ROOM 305, JUDGE'S FILE, INDICTMENT JACKET



(9)

State of New Jersey

**STATE PAROLE BOARD**

# Certificate of Parole

JEFFERSON, Richard P252220

The State Parole Board, by virtue of the authority conferred upon it by the provisions of P.L. 1979, c.441 (C.30:4-123.45, et seq.) and under the rules and regulations promulgated pursuant thereto, does hereby grant a parole to JEFFERSON, Richard P252220, who was convicted of the crime(s) and sentenced as indicated below:

| Date of Sentence / Offense Detail | County | Sentence Detail |
|---|---|---|
| April 28, 1993 | Hudson | 20 years , 10 years M/M |

Attempted Murder - 1st Degree, 20 years , 10 years M/M
Robbery - 1st Degree, 20 years , 10 years M/M c/c
Robbery - 1st Degree, 20 years , 10 years M/M c/c

91-08017-02
92-0300-507
91-0801-577
Sentenced 4-28-93

TOTAL TERM: 20 years , 10 years M/M

Said inmate is now confined in the **EAST JERSEY STATE PRISON** by virtue of the sentence(s) imposed for the said conviction of the crime(s) aforesaid. This parole is applicable solely to said aforesaid sentence(s) and to no other, limited by and subject to the conditions annexed hereto and made part hereof, and is effective on NO EARLIER THAN JANUARY 13, 2003 or as soon thereafter as a suitable parole plan has been approved by the State Parole Board, and upon the further conditions that the said inmates accepts the conditions contained herein and annexed hereto, as evidence by his/her signature affixed hereto and to a copy hereof retained as a part of the record of the parolee.

This parole is subject to revocation for violation of the conditions annexed hereto and forming a part hereof.

IN TESTIMONY WHEREOF, I have hereunto set my hand; and caused our Seal to be affixed this TWENTY-SIXTH day of SEPTEMBER in the year of our Lord, TWO THOUSAND TWO.

STATE PAROLE BOARD

Certifying Member(s):

DOMINIC PORROVECCHIO LAURIE FUCHS

GENERAL CONDITIONS OF PAROLE:

From the date of your release on parole until the expiration of your maximum sentences(s) or until you are discharged from parole, you shall continue to be under the supervision of the Division of Parole. A warrant for your arrest may be filed and this parole may be revoked for serious or persistent violations of the conditions of parole. You shall not be credited for time served on parole from the date a parole warrant is issued for your arrest if you are in violation of parole to the date that you are arrested and placed in confinement for violation of parole.

1. You are required to obey all laws and ordinances.
2. You are to report in person to your District Parole Supervisor or his/her disignated representative immediately after you are released on parole from the institution, unless you have been given other written instructions by the institutional parole office, and you are to report thereafter as instructed by the District Parole Supervisor or his or her designated representative.
3. You are to notify your Parole Officer immediately after any arrest, immediately after being served with or receiving a complaint or summons and after accepting any pre-trial release, including bail.
4. You are to immediately notify your parole officer upon the issuance by the appropriate court, pursuant to the Prevention of Domestic Violence Act N.J.S.A. 2C:25-17 et. seq., of an order granting emergency relief,

Witness ______________________

Dated ______________ 20 ____

Signature ______________________

SPB-130 (pdf)



State of New Jersey
STATE PAROLE BOARD

Certificate of Parole

JEFFERSON, Richard P252220

a temporary or final restraining order or an order establishing conditions of release or bail in a criminal matter or offense arising out of a domestic violence situation. You are to comply with any condition established within the respective order until the order is dissolved by the appropriate court or until a condition is modified or discharged by the appropriate court.

5. You are to obtain approval of your Parole Officer:
   a. For any change in your residence or employment location.
   b. Before leaving the state of your approved residence.
6. You are required not to own or possess any firearm, as defined in N.J.S.2C39-1f, for any purpose.
7. You are required not to own or possess any weapons enumerated in N.J.S.39-1r.
8. You are required to refrain from the use, possession or distribution of a controlled dangerous substance, controlled substance analog or imitation controlled dangerous substance as defined in N.J.S.2C:35-2 and N.J.S.2C:35-11.
9. You are required to make payment to the Division of Parole of any assessment, fine, restitution, D.E.D.R. penalty and Lab Fee imposed by the sentencing court.
10. You are to register with the appropriate law enforcement agency and, upon a change of address, re-register with the appropriate law enforcement agency if you are subject to the provisions of N.J.S.A. 2C:7-2.
11. You are to refrain from behavior which results in the issuance of a final restraining order pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 et. seq.
12. You are to waive extradition to the state of New Jersey from any jurisdiction in which you are apprehended and detained for violation of this parole status and you are not to contest any effort by any jurisdiction to return you to the state of New Jersey.
13. You are not to operate a motor vehicle without a valid driver's license.
14. You are to submit to drug and alcohol testing at anytime as directed by the assigned Parole Officer.

SPECIAL CONDITION(S)

You will be paroled to any outstanding detainer(s) only initially; thence upon resolution of said detainer(s), you will be released to a parole plan acceptable to the New Jersey State Parole Board with the following Special Conditions:

You will be paroled to a MARYLAND parole plan. The Board empowers the supervising parole authority to impose and discharge any Special Conditions deemed necessary for successful parole adjustment.
The parolee is not to be returned to New Jersey without prior notification to the New Jersey State Parole Board.

The Board recommends to the supervising parole authority that they impose the following Special Condition(s) for you as it is deemed necessary.
ANY SPECIAL CONDITIONS DEEMED APPROPRIATE BY MD AUTHORITIES.

Special Conditions of parole may be imposed and/or discharged pursuant to N.J.A.C.10A: 71-6.4.

In consideration of the action of the State Parole Board in paroling me, I hereby accept this parole and I hereby agree to be bound by the foregoing conditions. Any serious or persistent violation of the conditions herein shall be sufficient cause for revocation of my parole.

AMP

Witness

Dated ________ 20 ____

Signature

SPB 138 (pdf)



11

## New Jersey State Parole Board

### Parole Reporting Instructions

To: JEFFERSON,RICHARD PN#252220 From: SPB
(EJSP)
Approved Address:(2718 N. FENWICK AVENUE BALTIMORE MD 21218)
Date: February 26, 2003

You are being released from custody (or from any detainer ) to the supervision of the Out of State Parole in accordance with the conditions set by the State Parole Board. You are hereby instructed to report immediately to the following Parole Office:

**2100 GUILFORD AVENUE BALTIMORE,MD 21202**

In the event you will be late reporting, you must call the Parole Office at the following number:

If you have occasion to write the [redacted] so by using the following address:

**2100 GULF[redacted]ORE, MD 21202**

attached

### Detainer Information

You are being turned over to on . This warrant was issued by and signed by , charging you with . Once you are released from the custody of this detainer, you are to immediately report to the above Parole Office.

### Parolee's Agreement

I hereby agree that when I am released from custody (or from a detainer or warrant filed against me), that I will report immediately to . I understand that my failure to do so will result in a warrant being filed for my arrest.

Witness

Signature of Parolee

Copy To: Central Parole Bureau
District Office #
Classification
SPB File

Release Information
Parole Date: 03/04/2003
Release Date: 03/04/2003
Max Date.
Funds:

Form I-5 (SPB)

(201-795-6669) SEC
201-795-6121

Johanna, criminal clerk, Hudson Co Court, verified that the NJ state term was ordered to run concurrent to federal term sentenced 4/28/92 [see case mgmt] Concurrent!

FILED
SEP 24 1992
AT 8:30 ................M
WILLIAM T. WALSH
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
Criminal Action No. 91-266(HLS)

UNITED STATES OF AMERICA

-vs-

RICHARD S. JEFFERSON,

Defendant.

TRANSCRIPT OF PROCEEDINGS
(SENTENCING EXCERPT)

Newark, New Jersey

September 11, 1992

B E F O R E:

THE HONORABLE H. LEE SAROKIN
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

MICHAEL CHERTOFF, U.S. ATTORNEY
BY: JAYNE MEYERS, Assistant U.S. Attorney,
for the Government.

MICHAEL A. ROBBINS, ESQ.,
Attorney for Defendant.

Pursuant to Section 753 Title 28 United States Code, the following transcript is certified to be an accurate record as taken stenographically in the above-entitled proceedings.

Phyllis T. Lewis CSR

PHYLLIS T. LEWIS, C.S.R.
Official Court Reporter - United States District Court
P.O. Box 25588, Newark, New Jersey 07101
(201)-645-3677

incident.

There appears to exist a preponderance of evidence, indeed, overwhelming evidence in these cases related to his culpability. However, none of these cases were afforded points in the criminal history computation.

All of these instances involve serious assaultive conduct, and Jefferson's criminal history category of three appears to significantly underestimate the seriousness of his prior conduct or the likelihood of recidivism.

Counsel informs the Court, and the Court had been informed previously, that the Hudson County Prosecutor's Office will in all likelihood afford the two defendants a plea agreement, which will involve a recommendation for a term of imprisonment concurrent with the sentencing imposed for the instant offense by this Court.

In essence, this provides no additional sanction under the state system for the two armed robberies in Jersey City, as well as the attempted murder of the police officers. Therefore, the full responsibility for this sanction and punishment appears to rest with this Court.

Under these circumstances, there appears to exist an overwhelming basis and justification for an upward departure pursuant to 4A1.3, adequacy of criminal history category, pursuant to 5K2.0, more than one victim involved in the robbery, as well as relevant conduct pursuant to

1B1.3, conduct not adequately considered in the guideline computation.

As computed in the presentence report, Mr. Jefferson received a total of five criminal history points for one prior conviction and parole violation. This places him in a criminal history category of three. Points were not assessed for the juvenile conviction of March 12th, 1982.

It appears that a conservative, realistic assessment of Mr. Jefferson's true criminal history category is a category five. This is based upon a very conservative estimate of unadjudicated charges that will in all likelihood result in convictions and terms of imprisonment exceeding one year and one month, which would afford three points under 4A1.1(a) of the guidelines.

Accordingly, the Court is allotting a six-point increase for the four outstanding charges. This is based upon an estimate that Mr. Jefferson will be convicted and sentenced on at least two of these four charges.

following this rationale, Mr. Jefferson's true profile for the purposes of sentencing enhancement will be 12 criminal history points and a criminal history category of five. Therefore, the Court is imposing an upward departure based upon a criminal history category of five and an offense level of 28, which results in a guideline

imprisonment range of 130 to 162 months on count two.

The Court also wishes to note that there is an alternate rationale for an upward departure by a computation of relevant conduct in this offense.

Relevant conduct may be viewed as a continuum of behavior beginning with the armed theft of the car in preparation for the bank robbery, leading to the two armed robberies on two consecutive days, and culminating in the bank robbery. As previously noted, much of this behavior will receive no additional sanctions under the state system.

A consideration of these salient elements for the purposes of departure involves the guideline computation of four separate adjusted offense levels for the four robberies under 3B3.1 guidelines. This is accomplished through a consideration of factors indigenous to each of the separate robberies and their characteristics which are not groupable under 3D1.2.

Based upon the computation of all relevant conduct, including the armed robbery of the car in Maryland, the robbery of the grocery store, robbery of the liquor store and the bank robbery, the Court could have determined a total offense level of 34, which combined with a criminal history category of three, would have yielded a guideline range of 188 to 235 months for count two.

However, the Court makes the finding of a total

offense level of 28, and upwardly departs to a criminal history category of five, which yields a guideline imprisonment range of 130 to 162 months for count two.

Based upon that upward departure, it is the judgment of the Court and pursuant to the Sentencing Reform Act of 1984 that the defendant Richard Jefferson is hereby committed to the custody of the Bureau of prisons to be imprisoned for a term of 210 months. This consists of 150 hundred months on count two, and 60 months on count four, which is to run consecutive to the sentence imposed on count two.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five years. This term consists of five years on count two, and three years on count four to run concurrent to each other.

Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office to the district in which he is released.

While on supervised release, the defendant shall not commit any other crime, federal, state or local, and shall abide by the standard conditions of supervised release that have been adopted by this Court, as well as the following special conditions:

The defendant shall refrain from the illegal

possession and/or use of drugs and shall submit to urinalysis or other forms of testing to assure compliance.

It is further ordered that the defendant shall submit to drug treatment on an outpatient or inpatient basis as directed by the United States Probation Office.

The defendant shall abide by the rules of the program and remain in treatment until satisfactorily discharged with the approval of the United States Probation Office.

It [redacted]ed that the defendant shall pay to the Unite[redacted]al assessment of $50 on each count, for a [redacted] which shall be due immediately.

Mr. Jefferson, the Court has imposed a substantial sentence upon you in this matter, but one thing is you will be moved, I would expect in the near future, out of the local jail. You will be put in a federal prison.

You indicated to the Court that you are going to take advantage of this opportunity to straighten out your life, and I hope that you will do so.

Thank you.

MR. JEFFERSON: Thank you, your Honor.

MS. MEYERS: At this the Government moves to dismiss the remaining counts of the indictment.

THE COURT: Motion granted.

Thank you.

18

SCHTS 540*23 * SENTENCE MONITORING * 04-14-2003
PAGE 001 * COMPUTATION DATA * 11:34:00
AS OF 04-14-2003

REGNO..: 14921-050 NAME: JEFFERSON, RICHARD

FBI NO...........: 27371CA2 DATE OF BIRTH: 03-18-1966
ARS1.............: SCH/A-DES
UNIT.............: 3 QUARTERS.....: C08-001L
DETAINERS........: NO NOTIFICATIONS: NO

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE: 06-03-2018 VIA GCT REL

----------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

COURT OF JURISDICTION...........: NEW JERSEY
DOCKET NUMBER...................: 91-266
JUDGE...........................: SAROKIN
DATE SENTENCED/PROBATION IMPOSED: 09-09-1992
DATE COMMITTED..................: 03-31-2003
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

| | FELONY ASSESS | MISDMNR ASSESS | FINES | COSTS |
|---|---|---|---|---|
| NON-COMMITTED.: | $100.00 | $00.00 | $00.00 | $00.00 |

RESTITUTION...: PROPERTY: NO SERVICES: NO AMOUNT: $00.00

-------------------------CURRENT OBLIGATION NO: 010 --------------------------

OFFENSE CODE....: 554
OFF/CHG: 18 USC 2113(D), BANK ROBBERY; 18 USC 2113(A)(D), 924(C), POSSESSION OF A FIREARM IN THE COMMISSION OF A BANK ROBBERY

SENTENCE PROCEDURE.............: 3559 SRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.: 210 MONTHS
TERM OF SUPERVISION............: 5 YEARS
CLASS OF OFFENSE...............: CLASS B FELONY
DATE OF OFFENSE................: 05-30-1991

G0002 MORE PAGES TO FOLLOW . . .

19

SCHTS 540*23 * SENTENCE MONITORING * 04-14-2003
PAGE 002 OF 002 * COMPUTATION DATA * 11:34:00
AS OF 04-14-2003

REGNO..: 14921-050 NAME: JEFFERSON, RICHARD

-------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 04-03-2003 AT SCH AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 03-04-2003
TOTAL TERM IN EFFECT............: 210 MONTHS
TOTAL TERM IN EFFECT CONVERTED..: 17 YEARS 6 MONTHS
EARLIEST DATE OF OFFENSE........: 05-30-1991

TOTAL PRIOR CREDIT TIME.........: 0
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 823
TOTAL GCT EARNED... [redacted]
STATUTORY RELEASE DA[redacted]03-2018
SIX MONTH /10% DATE [redacted]03-2017
EXPIRATION FULL TER[redacted]03-2020

PROJECTED SATISFACTION DATE.....: 0[redacted]03-2018
PROJECTED SATISFACTION METHOD...: GCT REL

REMARKS.......: PAROLED FROM NEW JERSEY STATE SENTENCE TO USM DETAINER ON 03-04-03.

Note: I supposed to have been in federal custody serving both federal & State concurrent to fede

G0000 TRANSACTION SUCCESSFULLY COMPLETED

Plaintiff's Note: See Judgment & Commitment at pgs.

20

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) (Inmate Records) McEntyer? | DATE: May 1, 2003 |
|---|---|
| FROM: Richard Jefferson | REGISTER NO.: 14921-050 |
| WORK ASSIGNMENT: N/A Disabled | UNIT: 3B - 111 FCI-Sch |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

On April 19 2003, I requested (Inmate Records) with you To proceed with Nunc Pro Tunc, With designation of East Jersey State Prison as place of confinement of federal Sentence imposed September 9, 1992. Nearly 12 years to federal credit. I never said that Judge Sarokin ran federal sentence concurrent with State term. I did not receive State term until April of 1993, seven (7) months later. State ran concurrent to feds. Federal Bureau of Prisons has discretion to credit federal term for time spent in State facility. SEE USC.A §3621 (b). In accordance with BOP's program statement (5160.2 at 6; I am entitle to "fair Treatment" Proceed with Nunc Pro Tunc, I pray!

R Jefferson

(Do not write below this line)

DISPOSITION:

YOUR REQUEST FOR NUNC PRO TUNC DESIGNATION WAS FORWARDED TO THE NORTHEAST REGIONAL OFFICE ON APRIL 25, 2003. THEY WILL RESPOND TO YOU DIRECTLY.

Plaintiff's Note: for response see pg 33 (herein)

| Signature Staff Member | Date |
|---|---|
| C.H. MCINTYRE, ISM | 5/1/03 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94



U.S. Department of Justice

Federal Bureau of Prisons

*Northeast Regional Office*




*U.S. Custom House*
*2nd & Chestnut Streets*
*Philadelphia, PA. 19106*

July 1, 2003

Richard Jefferson
Fed. Reg. No. 14921-050
FCI Allenwood
P.O. Box 2000
White Deer, PA 17887

Re: Nunc Pro Tunc Designation

Dear Mr. Jefferson:

Correspondence has been forwarded to the Clerk of the Court, District of New Jersey, in regard to your request for a nunc pro tunc designation. The Honorable H. Lee Sarokin, your sentencing Judge, has retired from the bench into private practice and we understand that an assigned Judge will be reviewing the transcript for clarification of the Court's intent at the time of sentencing.

As soon as we receive the clarification, a decision will be made by this office and you will be notified.

Sincerely,

Krystal McCright
Regional Inmate Systems Specialist

22

RICHARD S. JEFFERSON
FED. REG. NO. 14921-050
F.C.I. ALLENWOOD (MED)
P.O. BOX 2000
WHITE DEER, PA 17887

JULY 27, 2003

FEDERAL BUREAU OF PRISONS
320 FIRST STREET, N.W.,
WASHINGTON, D.C. 20534

re; Nunc Pro Tunc Designation

1) I have been informed by Northeast Regional Inmate Systems Specialist, Krystal McCright, that my Nunc Pro Tunc has been processed. However, the sentencing Judge, Honorable Sarokin has retired into a private practice. And another Judge has been appointed to go over my sentencing transcript to **determine the former Judge's intention as to sentencing**, whether to start my time when imposed or began the federal sentence eleven (11) years later, after completing a state term which was imposed seven months after federal sentence imposition. I await the decision to be made by the Regional Office.

2) **The Bureau Of Prisons has discretion to designate the place of a prisoner's imprisonment**, and B.O.P. may exercise that discretion to **designate, Nunc Pro Tunc, a State Facility, East** Jersey State Prison, where petitioner served time since 1993, after the imposition of Federal and State Terms.

3) This designation would serve the purpose of both terms **in accordance with 18 U.S.C.A. § 3621 (b).** It will remain unclear whether Honorable Sarokin wanted federal term to run consecutive, however the law is clear.

4) **CRIMINAL LAW KEY 991(1.5) States:** District Judge had no authority to run Federal sentence consecutive to a not yet imposed State sentence; Authority belongs to the Attorney Gen.,



18 U.S.C.A. §§ 3568, 4082 (a). Therefore, petitioner is at the mercy of the B.O.P. discretion, and the determination of the newly appointed Judge, whom should come to the same conclusion.

5) **FURTHERMORE, 18 U.S.C.A. § 3584; U.S.S.G. § 561.3, per** 18 U.S.C.A., that Courts cannot run neither way, consecutive or concurrent to a not yet imposed sentence. **SEE sentencing and punishment key 636.**

6) As petitioner mentioned to Inmate Record Supervisor, Mr. McIntyre (ISM), at Schulykill in April of 2003, Federal Judge Sarokin ordered that both, state and federal terms, would be served in federal custody, due to the assaults of officers at Hudson County Jail, and state Judge Davis agreed to run state sentence concurrent to federal term. This should all be a matter of records.

7) How I remained in state custody is still a mystery to me. **In Kiendra V. Hadden, 763 F.2d 69, 72 (2nd Cir. 1985):** It was declared that "Prisoner is entitled to serve time promptly... serving it from date he is ordered to serve it...if without his fault, the U.S. Marshals neglects to place him in the proper custody.

8) On the one hand, state Judge Davis's intention to run term concurrent to federal term is ignored; and on the other hand, federal Judge Sarokin's desire to protect petitioner from further violations (assault by staff) was also ignored. **In addition,** the Honorable Sarokin immediately transferred petitioner Jefferson to Union County Jail, Elizabeth, New Jersey because of my complaints of said incidents in open Court.

9)10) Prior to sentencing, it was made clear to petitioner that time served would be around thirteen (13) years and eight (8) months. Neither Judges' intends or clearly mentioned that I would serve a total of nearly thirty (30) years.

10) It is a matter of petitioner's progress report, that there were no incident reports made on petitioner since 1993. In addition, Petitioner obtained several programs: Life Skills, Anger Management, Writer's Digest Novel Course (out side correspond), and this petitioner has made plans to provide a better life for his two children.

11) However, petitioner's children are in custody of Adams County Child Services, Gettysburg, Pennsylvania, due to petitioner's terrible mistake of even contemplating criminal activity. Now the children cry for their father's return. Likewise, I cry freedom.

12) I humbly request the opportunity to do right by my children, society, and myself. I further request that the B.O.P., **under their power, 18 U.S.C.A. § 3621, and B.O.P.'s program statement 5160.2 at 6, to entitle me to "fair treatment"** in so far as, give me this one chance, **on this application; for Nunc Pro Tunc--Designation of the State facility** as the place of confinement for my federal sentence, imposed September 9, 1992. **Also see 28 C.F.R. 541.12...**

13) If the B.O.P. should grant said designation, I will be either released on parole, or rewarded with a downgrade of status to a Low-level or minimum-level custody.

I have presented to you that which is true and correct to the best of my ability. If any of this is intentionally false, feel obliged to penalize me according to perjury § 1746.

I pray that my request is considered in light of good faith.

RESPECTFULLY,

c;
Dir. B.O.P., K. H. Sawyer
Asst. Dir., B.O.P., B.K. Sasser
Sec., B.O.P., P. C. P. Monroe

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

(25)

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: JEFFERSON, RICHARD (LAST NAME, FIRST, MIDDLE INITIAL) #14924-050 (REG. NO.) 3A (UNIT) ALM (INSTITUTION)

**Part A—REASON FOR APPEAL** "NUNC PRO TUNC" UNFAVORABLE RESPONSE

The Northeast Regional Office did not seriously consider Nunc Pro Tunc designation. The record of federal court is unclear of concurrent/Consecutive sentence to yet not imposed State sentence. However, Appellant believes that the federal Court did not intend for imposed sentence to extend over a period of 1992-2020. "Prior to accepting a plea of guilty... The court shall admonish the defendant of: (1) The range of the punishment attached to the offense. (2) And appellant was assured by all parties that punishment for 210 months would not exceed 13 yrs-8 mos.

Nov. 7 2003 (DATE) (1) ATTACHMENT(S) [signature] (SIGNATURE OF REQUESTER)

**Part B—RESPONSE**

DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 322382

**Part C—RECEIPT**

CASE NUMBER:

Return to: LAST NAME, FIRST, MIDDLE INITIAL REG. NO. UNIT INSTITUTION

SUBJECT:

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN

BP-231(13) APRIL 1982

#14921-050
FCI Allenwood
P.O. Box 2000
White Deer, PA
17887

(26)

REQUEST FOR NUNC PRO TUNC
BP-11 APPEAL
BP-10 UNFAVORABLE RESPONSE

Nov 7, 2003

Although there seem to be discrepancy in jurisdiction, it is clear that the record reflects State court's intention of concurrent sentence with federal sentence. My understanding was that federal B.O.P. would retrieve me from state custody in order for State judge's intent to be honored. Rahway State Prison, New Jersey's Administrators, via remedies informed that federal term was running, that when I requested access to the courts- "Mr. Jefferson, your transcripts can not be found in archives."

I believed that the government would not lie or betray. Yet, one aspect of the present scenario is troubling, the state judge's order of concurrency has been ignored. How does this square, if at all, with principles of comity?

The decision to run federal sentences (together) concurrently or (wild) consecutively w/pending sentences is governed by 18 U.S.C. § 3584(a) ("If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt for another offense that was the sole objective of the attempt.")

Appellant beseech the Central Office to resolve this matter of error. The federal charges of Bank Robbery and Possession of firearm in the Commission, is without a doubt the sole objected of State charges of attempted murder during the pursuit of, and apprehension of Bank Robbery.

Therefore, the Region's decision to deny federal credit while in custody of State is not consistent with the Criminal Justice System. Appellant humbly request federal credit from time of imposition 9-9-92! And/or from time of incarceration 5-30-91!

Respectfully,

[signature]

27

**UNITED STATES GOVERNMENT**
**MEMORANDUM**
**FEDERAL BUREAU OF PRISONS**

DATE: December 8, 2003

REPLY TO ATTN OF: Administrative Remedy Coordinator
National Inmate Appeals, Central Office

SUBJECT: Administrative Remedy Appeal

TO: Richard Jefferson
Reg. No. 14921-050
FCI Allenwood, Medium

Please find attached responses: ① Record Dept. ② Counselor ③ Warden

_____1. Your appeal was answered on _____. If you have not received your copy by now, you may ask the institution Administrative Remedy Coordinator to provide you with a copy from the Warden's Administrative Remedy File.

_____2. Your appeal was filed on _____ and a response is still in progress. If more than 40 days have elapsed since the filing date, you are entitled to consider your appeal denied. However, some cases cannot be decided within this time period. In that event, the time for response may be extended for an additional 20 days. Staff will provide you with a computer-generated notice of extension to inform you of the extension.

_____3. Our records indicate that the appeal you reference has not been filed with this office.

_____4. You have not provided sufficient information for us to respond to your inquiry. If your inquiry concerns an administrative remedy, please provide the case number, the date filed in this office or date mailed by you, your name and register number, and the subject of your administrative remedy. If you cannot provide all of this information, please provide as much as possible.

__X__5. A review of your inquiry reveals it contains issues you should first bring to the attention of institution or Community Corrections Center staff. If you are unable to resolve the issue(s) informally, you may present your complaint to the Warden via the Administrative Remedy Procedure. This procedure is available to inmates confined in federal facilities to complain about any aspect of their confinement.

_____6. Extensions are granted only if an inmate's submission is untimely by no fault of his own. Requests for extensions are only considered when submitted with the complete appeal packet.

_____7. Central Office Administrative Remedy Appeal responses are the final agency position. If you are dissatisfied with the response, you may pursue any legal recourse you deem appropriate.

_____8. We can only address issues within the jurisdiction of the Federal Bureau of Prisons. Your issue is one of _____________ jurisdiction.

_____9. Your appeal was rejected and returned to you on _____.

_____10. Other:

2004



B103

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 17, 2004

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : RICHARD JEFFERSON, 14921-050
      ALLENWOOD MED FCI    UNT: UNIT 3A    QTR: C02-115LH
      P.O. BOX 2500
      WHITE DEER,  PA 17887

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 322382-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED  : FEBRUARY 9, 2004
SUBJECT 1      : CONCURRENT SERVICE
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                 WRONG LEVEL.  YOU SHOULD HAVE FILED AT THE
                 INSTITUTION,  REGIONAL OFFICE,  OR CENTRAL
                 OFFICE LEVEL.

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98

U.S. DEPARTMENT OF JUSTICE FEDERAL BUREAU OF PRISONS

29

| TO: (Name and Title of Staff Member) Record Dept., Wilcome | DATE: 12-30-03 |
|---|---|
| FROM: Richard Jefferson | REGISTER NO.: 14921-050 |
| WORK ASSIGNMENT: Edu. Ord. | UNIT: 3A 115 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

I am requesting a "Nunc Pro Tunc" designation of Rahway State Prison, New Jersey, to be credited to federal sentence. On May 30, 1991 I committed a Bank Robbery in Poss. of F/A. Immediately after, I was pursued by arresting officers, and in a shoot out-attempted to murder a police officer. I was apprehended and allegedly entered jurisdiction of state custody. Pursuant to writ, I was "Borrowed" to answer federal charges, June 20, 1991. I request relief pursuant to 18 USC § 3585(b)(2): CREDIT FOR PRIOR CUSTODY. Furthermore, I was sentence by federal Judge 9-9-92, to 210 months, Returned to State custody, and sentenced to 20 years to be ran concurrent to federal ter Pursuant to 18 USC § 3584; Multiple terms "Related" shall run together.

Richard Jefferson

(Do not write below this line)

DISPOSITION:

Denied 10-14-03 from Letter From DSCC Office.

Signature Staff Member: [signature] | Date: 1-6-4

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

Printed on Recycled Paper

ALM 1330.13B
Attachment 1

30

# INFORMAL RESOLUTION ATTEMPT

In accordance with Program Statement 1330.13, Administrative Remedy Procedures for Inmates. This form will serve as documentation by the respective staff member and his/her unit manager to indicate an informal attempt to resolve the complaint of the following inmate. Inmates are NOT to complete this form.

NAME: Jefferson, Richard REG. NO. 14921-050

DATE FORM INITIATED: January 09, 2004 (Date) STAFF: M. Buck (Name) 3A (Unit)

A BP-229 (13) WILL NOT BE ACCEPTED WITHOUT THIS COMPLETED FORM ATTACHED

1. Nature of complaint (to be completed by staff): See attached complaint.

2. I have read the complaint above as written by Unit Staff and agree it is accurate.

SEE ATTACHED SIGNED COMPLAINT
Inmate's Signature

SEE ATTACHED
Date

3. Staff Member Assigned to Respond by U/M: I.S.M.

4. Efforts Made to Resolve the Problem: See attached response.

5. Applicable Program Statement Used in this Informal Resolution Attempt: N/A

6. Inmate's Response to Informal Remedy Attempt: FILE BP-9

Prepared by: M. Buck / Correctional Counselor

Reviewed by: Stephen G. Wagner / Unit Manager

Original Returned to Inmate (Date): January 14, 2004

31

INFORMAL RESOLUTION

BP-8½

---

I am requesting a "Nunc Pro Tunc" designation of Rahway State Prison, New Jersey, to be credited to federal sentence. Pursuant to **18 U.S.C. § 3585(b)(2): CREDIT FOR PRIOR CUSTODY-** A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences...as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed.

On May 30, 1991, I, Richard Jefferson committed a Bank Robbery in Possession of a Firearm. Immediately after, I was pursued by arresting officers, and attempted to murder a police officer. Consequently, I was apprehended for the related offenses, and allegedly entered the jurisdiction of state custody.

Pursuant to federal writ, I was "Borrowed" to answer the fore mentioned federal charges, June 20, 1991. And on September 9, 1992, I was sentenced to 210 months and returned to the state. And thereafter I was senteced to a term of 20 years to run concurrent to federal sentence.

**Furthermore**, pursuant to **18 U.S.C. § 3584** applies to my peculiar case, whereas, the multiple terms of imprisonment are the **"sole objected"** of one another. These said terms are to run together unless the court orders or statue mandates otherwise.

**Therefore**, B.O.P. has discretionary authority to grant such credit as requested, to retroactively began from arrest or upon federal writ for prosecution of related offense; pursuant to **U.S.C.A. § 3621(b)**; and **fair treatment**, pursuant to PS (5160.2 @ 6).

[signature]

Respectfully submitted

RECD 1/9/04



JEFFERSON, RICHARD
14921-050

Response to BP-8½

Please see attached response dated 10-23-2003. Your "Non Pro Tunc" Designation request has been denied.



U.S. Department of Justice

Federal Bureau of Prisons

*Northeast Regional Office*

*U.S. Custom House*
*2nd & Chestnut Streets*
*Philadelphia, PA. 19106*

October 23, 2003

Richard Jefferson
Fed. Reg. No. 14921-050
FCI Allenwood
P.O. Box 2000
White Deer, PA 17887

RE: Request for Nunc Pro Tunc Designation

Dear Mr. Jefferson:

Your request for credit toward your federal sentence was received in this office on August 4, 2003. As a result of the decision in Barden v. Keohane, 921 F.2d 476 (3rd Cir. 1990), the Bureau of Prisons considers your request for prior custody credit as a request for a "nunc pro tunc" designation. Under Bureau policy, a designation for concurrent service of sentence should be made only when it is consistent with the intent of the sentencing court or with the goals of the criminal justice system.

Our records indicate that you were arrested by state authorities on May 30, 1991, on charges of attempted murder of a police officer and robbery. On June 20, 1991, while in state custody, you were "borrowed" pursuant to a federal writ for prosecution on federal charges of Bank Robbery and Possession of a Firearm in the Commission of a Bank Robbery. On September 9, 1992, you were sentenced in federal court to 210 months and returned to state custody. On April 28, 1993, you were sentenced by the State of New Jersey to a term of 20 years to run concurrent with the federal sentence. On March 4, 2003, you were paroled by the State of New Jersey to the custody of the U.S. Marshals for service of the federal sentence.

Production of an inmate via a writ for prosecution does not shift primary custodial jurisdiction. The United States had the responsibility to return to the State of New Jersey to address your state charges and to complete any sentence imposed by the state. The state court has no authority to order commencement of a federal sentence just as the federal government cannot prescribe when a state sentence will commence. Under 18 U.S.C. § 3585(a), a federal sentence commences when the defendant is in custody for purposes of serving the federal sentence.



Richard Jefferson
Fed. Reg. No. 14921-050
FCI Allenwood
P.O. Box 2000
White Deer, PA 17887
Page Two

Based upon a thorough review of your sentencing order, the application of the federal statutes, clarification of intent of the sentencing Court provided by the United States Probation Office, and the discretion afforded to the Bureau of Prisons, your request for a "nunc pro tunc" designation is denied. I believe this decision is consistent with the intent of the federal sentencing court and with the goals of the criminal justice system.

Should you have further questions, please contact this office.

Sincerely,

Stephen L. Morgan
Regional Inmate Systems Administrator

Federal Bureau of Prisons

REQUEST FOR ADMINISTRATIVE REMEDY

35

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on re*

From: JEFFERSON, RICHARD — #14921-050 — 3A
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INS

Part A- INMATE REQUEST

REQUEST FOR "NUNC PRO TUNC" RAHWAY STATE PRISON, N

The decision to run federal sentences (together) concurrently or (wi... consecutively with pending sentences is governed by 18 U.S.C. § 3584(A): If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, EXCEPT THAT THE TERMS MAY NOT RUN CONSECUTIVELY FOR AN ATTEMPT AND FOR ANOTHER OFFENSE THAT WAS THE SOLE OBJECTIVE OF THE ATTEMPT!

In the instant case, federal sentence was imposed (9-9-92), and state sentence was imposed (4-28-93) concurrent to federal sentence. The two terms are the sole objective of one another (see all attachments). Furthermore, The federal judge was silent whether to run concurrent or consecutive, therefore the terms shall run concurrent, absent court order to do otherwise. This would satisfy the state judge's intention for both terms to run concurrently, as well as the federal judge's silence.

It is incumbent upon you, Warden Yates, to correct this error of nearly thirteen years (13) of federal credit.

(JANUARY 13, 2004)
DATE

[signature]
SIGNATURE OF REQUESTER

Part B- RESPONSE

This is in response to your Request for Administrative Remedy, receipted January 21, 2004, in which you request "NUNC PRO TUNC" designation.

Investigation of your request revealed that on April 25, 2003, a request for "Non Pro Tunc" designation was made on your behalf. On October 23, 2003, your request was denied. Attached is a copy of the letter dated October 23, 2003, from the Northeast Regional Inmate Systems Administrator denying the request.

In view of the above, your Request for Administrative Remedy is denied.

January 27, 2004
DATE

S. A. Yates
S. A. Yates, Warden
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE — CASE NUMBER: 322622-F1

Part C- RECEIPT — CASE NUMBER: ______

Return to: ______
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT: ______

15/05 W.C.

GIL: 1330.13C
DATE: January 17, 2000
SUBJECT: ADMINISTRATIVE REMEDY PROGRAM
PAGE: ATTACHMENT A

36

FEDERAL CORRECTIONAL INSTITUTION
GILMER, WEST VIRGINIA

REQUEST FOR ADMINISTRATIVE REMEDY
INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.13, Administrative Remedy Procedures for Inmates, states that before the inmate seeks formal review of a complaint, he must try to resolve the complaint informally before the inmate will be given an Administrative Remedy Form. The informal resolution process should be completed within three (3) workdays.

INMATE'S NAME: Richard Jefferson REG. NO. 14921-050 UNIT: A2

1. Specific Complaint: "Nunc Pro Tunc" (Now for Then): Complainant was sentenced by federal court to 210 mo.; Seven months later, State Court sentenced me to 20 yrs to be ran concurrent to related federal sentence. To satisfy the State concurrency to the federal, I had to be in federal custody. Someone from State Jurisdiction erred By Keeping me in State. However, the BOP @ Gilmer!

2. Relief Requested: Can Correct by: Designate Rahway New Jersey State Prison as an official facility for service of federal sentence from date of federal imposed sentence September 9, 1992-2003.

3. Date/Time Complaint Received From Inmate: 3/16/05 8:00A

4. Date/Time Informally Discussed With Inmate: 3/16/05 9:48 A

5. Staff Response: See attached denial letter. This letter has been sent to inmate from NorthEast Region, addressing this issue.

6. Date Administrative Remedy Provided: ________

7. Informal Resolution was/was not accomplished.

[signature] ________ 3/16/05
Inmate's Signature/Register Number Date

[signature] CSM ________ 3-16-05
Staff Member's Name and Title

M. L. Vellu ________ 03.16.05
Unit Manager's Signature

DISTRIBUTION: If complaint is informally resolved before being receipted, Correctional Counselors shall maintain informal resolution form for future reference. If complaint is not informally resolved, forward original resolution form, attached to Administrative Remedy, to the Administrative Remedy Coordinator/Clerk.



U.S. Department of Justice

Federal Bureau of Prisons

*Northeast Regional Office*

37

*U.S. Custom House*
*2nd & Chestnut Streets*
*Philadelphia, PA 19106*

October 23, 2003

Richard Jefferson
Fed. Reg. No. 14921-050
FCI Allenwood
P.O. Box 2000
White Deer, PA 17887

RE: Request for Nunc Pro Tunc Designation

Dear Mr. Jefferson:

Your request for credit toward your federal sentence was received in this office on August 4, 2003. As a result of the decision in Barden v. Keohane, 921 F.2d 476 (3rd Cir. 1990), the Bureau of Prisons considers your request for prior custody credit as a request for a "nunc pro tunc" designation. Under Bureau policy, a designation for concurrent service of sentence should be made only when it is consistent with the intent of the sentencing court or with the goals of the criminal justice system.

Our records indicate that you were arrested by state authorities on May 30, 1991, on charges of attempted murder of a police officer and robbery. On June 20, 1991, while in state custody, you were "borrowed" pursuant to a federal writ for prosecution on federal charges of Bank Robbery and Possession of a Firearm in the Commission of a Bank Robbery. On September 9, 1992, you were sentenced in federal court to 2[illegible]0 months and returned to state custody. On April 28, 1993, you were sentenced by the State of New Jersey to a term of 20 years to run concurrent with the federal sentence. On March 4, 2003, you were paroled by the State of New Jersey to the custody of the U.S. Marshals for service of the federal sentence.

Production of an inmate via a writ for prosecution does not shift primary custodial jurisdiction. The United States had the responsibility to return to the State of New Jersey to address your state charges and to complete any sentence imposed by the state. The state court has no authority to order commencement of a federal sentence just as the federal government cannot prescribe when a state sentence will commence. Under 18 U.S.C. § 3585(a), a federal sentence commences when the defendant is in custody for purposes of serving the federal sentence.

...hard Jefferson
Fed. Reg. No. 14921-050
FCI Allenwood
P.O. Box 2000
White Deer, PA 1788?
Page Two

Based upon a thorough review of your sentencing order, the application of the federal statutes, clarification of intent of the sentencing Court provided by the United States Probation Office, and the discretion afforded to the Bureau of Prisons, your request for a "nunc pro tunc" designation is denied. I believe this decision is consistent with the intent of the federal sentencing court and with the goals of the criminal justice system.

Should you have further questions, please contact this office.

Sincerely,

Stephen L. Morgan
Regional Inmate Systems Administrator

ISM

BSY-1330.13
July 18 2003
ATTACHMENT A

## ATTEMPT AT INFORMAL RESOLUTION
(Request for Administrative Remedy)

Federal Bureau of Prisons Program Statement 1330.13, Administrative Remedy Program, dated August 13, 2002, Provides that inmates have a responsibility to use the Administrative Remedy process in good faith. An inmate shall first present an issue of concern informally to staff and shall attempt to informal resolve the issue before an inmate submits a request for Administrative Remedy. The deadline for completion of informal resolve and submission of formal request (BP-9) is 20 Calendar days following the occurrent issue or concern.

**TO BE COMPLETED BY INMATE**

INMATE'S NAME: Richard Jefferson REG. NO.: 14921-050 UNIT: C3 115 DATE: 3/30/2006

1. Nature of problem and efforts have been made to resolve the problems. (List staff you have spoke with include copies of cop out responses) ILLEGAL INCARCERATION: May 30 1991 is earliest date of offenses and detention. On Sept. 9, 1992 I was sentenced by federal Court to 210 months. On April 2 1993, I was sentenced by State court to 10 mm - 20 max years to be ran Concurrent to any federal sentence including (9-9-92) federal imposition. Someone fumbled State/federal, causing State sentence to become consecutive from federal. The intentions of both Courts was that I serve maximum of 13.8 years.

2. State what action or resolution expected. Be Specific: (1) Grant Nunc Pro Tunc (designate State Penitentiary as service of federal sentence. (BOP-USP-BSY) has authority. (2) Grant immediate release! (3) Compensate me for each day illegally incarcerated (5-30-91 thru 5-30-2006) 15 years served; subtract 13.8 years = 1.4 years over time; Amount owed and due one million - four hundred Thousand UPON RELEASE $1,400,000.00

**TO BE COMPLETED BY STAFF**

3. Summary of investigation (indicate staff you spoke with and their responses) Include any resolution offered to inmate) Your request for Nunc Pro Tunc designation is denied at the institution level. You may continue your administrative Remedy procedure addressing this concern further. A letter from the US District Court responded [illegible] agrees with Consecutive interpretation of BOP [illegible]

4. Explanation for non-resolution: (State what Resolution was offered and Inmate's reason for not accepting Resolution) [illegible] at your Prior institution [illegible] per [illegible] Res. DSC Records staff, we at the institution ISM's must now deny [illegible] to further their administrative Remedy procedure.

On 4/14/06 Inmate Refused Offered Resolution. [signature] 4-6-06
Staff

Date & Time Issued: BP-8 3/29/06 11:20 Am Correctional Counselor: [signature]
Date & Time Inmate Returned: 4/4/06 11:50 Correctional Counselor: [signature]

Date & Time Investigation Completed and BP-9 issued: 4/14/06 1:30 pm
Staff issuing BP-9

Indicates review and agreement that informal Resolution attempts has been exhausted.

Unit Manager's Signature/Date: [signature] 4/14/06

On ____________, this issue was informally resolved.

______________ Inmate Signature ______ Date

(40)

INFORMAL RESOLUTION

BP-8½

---

I am requesting a "Nunc Pro Tunc" designation of Rahway State Prison, New Jersey, to be credited to federal sentence. Pursuant to **18 U.S.C. § 3585(b)(2): CREDIT FOR PRIOR CUSTODY-** A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences...as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed.

On May 30, 1991, I, Richard Jefferson committed a Bank Robbery in Possession of a Firearm. Immediately after, I was pursued by arresting officers, and attempted to murder a police officer. Consequently, I was apprehended for the related offenses, and allegedly entered the jurisdiction of state custody.

Pursuant to federal writ, I was "Borrowed" to answer the fore mentioned federal charges, June 20, 1991. And on September 9, 1992, I was sentenced to 210 months and returned to the state. And thereafter I was senteced to a term of 20 years to run concurrent to federal sentence.

**Furthermore,** pursuant to **18 U.S.C. § 3584** applies to my peculiar case, whereas, the multiple terms of imprisonment are the **"sole objected"** of one another. These said terms are to run together unless the court orders or statue mandates otherwise.

**Therefore,** B.O.P. has discretionary authority to grant such credit as requested, to retroactively began from arrest or upon federal writ for prosecution of related offense; pursuant to **U.S.C.A. § 3621(b)**; and fair **treatment**, pursuant to PS (5160.2 @ 6.

[signature]

**Respectfully submitted**

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

REQUEST FOR ADMINISTRATIVE REMEDY

(41)

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Jefferson Richard S. — 14921-050 — C2-115 — USP BSY
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

**Part A- INMATE REQUEST**

"ILLEGAL INCARCERATION"
"INACCURATE TIME CALCULATION"

I have served a consecutive State sentence, of which I maxed out in Sept. 2003. This was not the intention of State Dist. Judge, as opposed to State concurrency to federal. Nor was it the fed. Dist. Judge's intention that I serve more than 13.8 years total between State and federal terms, whereas its a matter of record (fed/State judges' ordered) State and federal terms served in B.O.P. as early as April of 1993, receiving some 2 years jail credits between the two jurisdictions. This would have clearly served the purpose of comity between State/federal jurisdiction. The BOP has denied Nunc Pro Tunc (three occasions), neglecting its duty to authorize correcting inaccurate time calculation. Had I been in BOP custody when prescribed, I would be home with my children/family. I am entitled to immediate release, and to continue to refuse, violates my constitutional, judicial, & human rights to be free, and free from cruel & unusual punishment/condition; and also, entitled to compensation, 1.4 million. (See BP-8). Request copy of U.S. Dist. Ct. response → BOP interpretation request!

April 15, 2006 — DATE

Richard Jefferson — SIGNATURE OF REQUESTER

**Part B- RESPONSE**

**SEE ATTACHED RESPONSE**

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**

CASE NUMBER: 410344-F1

CASE NUMBER:

**Part C- RECEIPT**

Return to:
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT:

DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN

BP-229(13)
APRIL 1982



REQUEST FOR ADMINISTRATIVE REMEDY
PART-B - RESPONSE

Remedy No. 410344-F1

This is in response to your Request for Administrative Remedy receipted April 18, 2006, in which you allege your sentence computation is calculated incorrectly and you are being held illegally. You further allege that your federal and state sentence were to run concurrent as you claim were ordered by both state and federal judges. You claim you are not receiving this benefit due to the Bureau of Prisons denying a Nunc Pro Tunc designation.

A review of your Judgment and Commitment file indicates you were sentenced in the United States District Court, District of New Jersey, Docket Number 91-266, imposed on September 9, 1992, to a term of 210 months. You were further sentenced in the state of New Jersey on a state parole violation to a term of 20 years to run concurrent with the federal sentence, imposed on April 28, 1993.

This matter was addressed with the Northeast Regional Office on April 25, 2003. A response was returned by the sentencing court on October 14, 2003. The court's decision supports the denial of your Nunc Pro Tunc designation based on a determination that the upward departure of 210 months sentence ordered was based on 150 months on count two, and sixty months on count four, to run consecutive as mandated by the statute. Your sentence computation has been calculated in accordance with Program Statement 5880.28, Sentence Computation Manual CCCA. Further, since your computation is assumed by the Designation Sentence and Computation Center, the United States Penitentiary, Big Sandy has no authority to grant a Nunc Pro Tunc designation.

Based on these findings, your Request for Administrative Remedy is denied.

If you are dissatisfied with this response, you may appeal to the Regional Director, Bureau of Prisons, Mid-Atlantic Regional Office, 10010 Junction Drive, Suite 100-N, Annapolis Junction, Maryland 20701, within twenty (20) calendar days from the date of this response.

Suzanne R. Hastings, Warden

4/24/06
Date

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

230(13)

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Jefferson Richard S. | 14921-050 | C2-115 | USP BSY

LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A - REASON FOR APPEAL** "ILLEGAL INCARCERATION"

I filed a BP-8 completed 4-14-2006, requesting "Nunc Pro Tunc designation of state facility for service of federal sentence. It was denied based on per North East Regional response Oct. 23, 2003. I recv. BP-9 response, 4-24-2006, who acknowledge state sentence concurrency to federal sentence. Appellant knows federal sentences are consecutive (Bank robbery and weapon...). I assert that federal J&C is silent regarding concurrency. However, 18 USC § 3584 states that multiple offenses sole objective to one another can be ran current. USP-BSY has refused to process Nunc Pro Tunc, whereas, BOP has authority to designate fed. sentence to state facility, because appellant was not suppose to serve concurrent state sentence to federal sentence in state custody. [In federal custody, state sentence would be automatic!]

May 3 2006

DATE

[signature]

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

MAY 10 2006

Bureau of Prisons
MARO Regional Counsel

DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 410344-R1

**Part C - RECEIPT**

CASE NUMBER:

Return to:

LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT:

DATE

SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN

BP-230(13)
JUNE 2002

(44)

EXTENSION OF TIME [illegible] RESPONSE - ADMINISTRATIVE REMEDY

DATE: JUNE [illegible], 2006

FROM: ADMINISTRATIVE REMEDY [illegible]
MID-ATLANTIC REGIONAL [illegible]

TO : RICHARD JEFFERSON, [illegible]
BIG SANDY USP [illegible] QTR: C03-115LH

ADDITIONAL TIME IS NEEDED [illegible] TO THE REGIONAL APPEAL IDENTIFIED BELOW. WE ARE [illegible] THE TIME FOR RESPONSE AS PROVIDED FOR IN THE ADMINISTRATIVE [illegible] PROGRAM STATEMENT.

95

# OFFICE OF THE HUDSON COUNTY PROSECUTOR

595 NEWARK AVENUE
JERSEY CITY, NEW JERSEY 07306

EDWARD J. DE FAZIO
PROSECUTOR

GAETANO T. GREGORY
FIRST ASSISTANT PROSECUTOR

TELEPHONE: (201) 795-6400
FAX: (201) 795-3365

February 25, 2008

Richard Jefferson
Reg. No. 14921-050
Federal Correctional
Institution Beckley
P.O. Box 350
Beaver, West Va 25813

RE: **State v. Richard Jefferson**
**Indictment Nos. 1702-08-1991**
**& 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**

Dear Mr. Jefferson:

Enclosed please find copies of Judgment of Convictions on Indictment 1702-08-1991 and Indictment 1577-08-1991. I could not find a copy of the Judgment of Conviction on Indictment 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.

As you correctly stated the sentence on all three cases was 20 years with 10 years without parole concurrent with each other and concurrent with your Federal Sentence.

Very truly yours,

EDWARD J. DeFAZIO
Prosecutor of Hudson County

BY: [signature]
Devarup Rastogi
Assistant Prosecutor

DR:bg
Enclosures



REMEDY ID : 4103[illegible]4-R1
DATE RECEIVED : MAY [illegible], 2006
RESPONSE DUE : JULY [illegible], 2006
SUBJECT 1 : OTHER SENTENCE COMPUTATION
SUBJECT 2 :
INCIDENT RPT NO:

47

RECEIPT - ADMINISTRATIVE REMEDY

DATE: JUNE 15, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
MID-ATLANTIC REGIONAL OFFICE

TO : RICHARD JEFFERSON, [illegible]-050
BIG SANDY USP UNIT: C UNIT QTR: C03-115LH

THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID : 410344-R1
DATE RECEIVED : MAY [illegible], 2006
RESPONSE DUE : JULY [illegible], 2006
SUBJECT 1 : OTHER SENTENCE COMPUTATION
SUBJECT 2 :
INCIDENT RPT NO:



**REGIONAL ADMINISTRATIVE REMEDY APPEAL**
**Part B - Response**

**Date Filed: May 19, 2006** **Remedy ID No.: 410344-R1**

You are appealing the Warden's response to your Administrative Remedy. You request your sentence be re-calculated. You claim your state and federal sentences run concurrent with each other and request a nunc pro tunc designation.

A review of this matter reveals that this issue has already been addressed previously. Your request was reviewed and a decision has been made to run your sentence consecutive to your state sentence.

Your appeal of the Warden's response is denied. If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534. Your appeal must be received in the General Counsel's Office within 30 days from the date of this response.

AUG 29 2006

Date

For [signature]

K. M. White
Regional Director
Mid-Atlantic Region

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

(49)

Type or use ball-point pen. If attachments are needed submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Jefferson Richard S. | 14921-050 | C2 115 | USP BSY
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A - REASON FOR APPEAL** "ILLEGAL INCARCERATION"

I filed a BP-8, completed 4-14-2006, requesting "Nunc Pro Tunc designation of State facility (East Jersey Rahway) for service of fed. sentence. It was denied. Also denied was return of, and copy of BP-8 (new Inst. Policy). I rec'v. BP-9 response, 4-24-2006, who acknowledge state sentence concurrency to federal sentence. BP-9 was denied. BP-10 was filed stating the above. It was denied, based on previous denial Oct. 23, 2003, N.E. Region, which the Mid-Atlantic Region has denied on the same basis. The BOP has authority to credit my federal sentence "now for then," "Nunc Pro Tunc." It's clear that I was supposed to be in federal custody (serving federal sentence & state sentence)! Had the state rendered custody to the BOP, would State sentence ran concurrent while in BOP custody? If yes, the BOP command- [has authority to correct the disparity of sentences!]

Sept. 15, 2006 [signature]
DATE | SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
Administrative Remedy Section

DATE | GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE | CASE NUMBER: 410344-A1

**Part C - RECEIPT**

CASE NUMBER:

Return to:
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT:

DATE | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN

BP-231(13)
JUNE 2002

026 50

**Administrative Remedy Number 410344-A1**
**Part B - Response**

You indicate your state sentence was ordered to run concurrently with the federal sentence. You request, therefore, a *nunc pro tunc* designation in order that your federal sentence may run concurrently with your state sentence.

Our review of this matter reveals both the Warden and Regional Director have adequately addressed your concerns. Bureau of Prisons' staff considered your request for *nunc pro tunc* designation 2003. The request was denied following a thorough review of all relevant factors, and you were advised of the denial by letter dated October 23, 2003.

Your sentence has been calculated as required by judicial precedent, federal statute, and Program Statement 5880.28, Sentence Computation Manual - CCCA.

Your appeal is denied.

11/2/2006
Date

Harrell Watts, Administrator
National Inmate Appeals




BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Ms. Trump (ISM) | DATE: 2-22-2007 |
|---|---|
| FROM: Richard [illegible] | REGISTER NO.: 14921-050 |
| WORK ASSIGNMENT: N/A | UNIT: Pine 2L FCI Beckley |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

"Nunc Pro Tunc"

Please credit my federal sentence to reflect imposition at September [illegible], 1992; fourteen years/3 months. In doing so, I'd be eligible for immediate release, and reunification w/ children & grands, and a loving family. → (unsuccessful) "Prior Remedy Attempts" (4 Institutions) ← The BOP does acknowledge that my State sentence was ran concurrent to federal sentence. Therefore, I should've been in federal custody (BOP) to satisfy such concurrency. It's not my fault State authorities abused their discretion. I pray that federal authorities exercise their discretion. Thank You!

(Do not write below this line)

DISPOSITION:

See attached! This issue has already been addressed & denied thru the admin. remedy process.

I also audited your file - it is correct as computed.

| Signature Staff Member D. Trump | Date 2-26-07 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

Printed on Recycled Paper

52

OCT. 22 2000 13:37 HP LASERJET 3200 P.4

UNITED STATES DISTRICT COURT
PROBATION OFFICE
DISTRICT OF NEW JERSEY

JOSEPH J. NAPURANO
CHIEF PROBATION OFFICER

DEPUTY CHIEF PROBATION OFFICERS
ERIC K. SNYDER
FRANK J. JOCHER
RICHARD J. GALLUZZO

SUPERVISION UNIT
20 WASHINGTON PLACE
6TH FLOOR
NEWARK, NJ 07102-3172
(973) 645-6161
FAX: (973) 645-2155

October 14, 2003

U.S. Department of Justice
Federal Bureau of Prisons
Northeast Regional Office
U.S. Customs House
2nd & Chestnut Streets
Philadelphia, PA 19106
Attn: Stephen L. Morgan
Regional Inmate Systems Administrator

RE: JEFFERSON, Richard
Reg. No. 14921-050
Case No. 97-266

Dear Mr. Morgan:

Reference is made to your recent missive regarding the above-cited federal inmate's request for Nunc Pro Tunc designation to have his federal sentence run concurrently with the State of New Jersey sentence he was serving. In your correspondence you requested clarification of the Court's intent at time of sentencing; you noted that policy states that the concurrent designation should be made only when it is consistent with the intent of the sentencing court or the goals of the criminal justice system.

As noted, Mr. Jefferson was arrested on May 30, 1991 by New Jersey state authorities on charges of "Attempted Murder of a Police Officer and Robbery". On June 20, 1991 the U.S. Marshals Service "borrowed" the offender pursuant to a federal Writ of Habeas Corpus Ad Prosequendum. On September 9, 1992 Jefferson was convicted of Bank Robbery and Possession of a Firearm in Commission of a Bank Robbery and sentenced by the Honorable H. Lee Sarokin (retired) to a federal term of 210 months imprisonment.

Jefferson was subsequently returned to state custody and sentenced by the State of New Jersey on April 28, 1993 to a term of 20 years to run concurrent with the federal sentence (currently at FCI Schuylkill, Minersville, PA.).

As noted, the federal Judgement and Commitment Order is silent regarding the impending state sentence and Bureau of Prisons has interpreted this sentence as consecutive. In a review of the presentence investigation, sentencing memorandum, and judicial comments at the time of sentencing, the U.S. Probation Office is in agreement with this interpretation.

In the sentencing of Mr. Jefferson on September 9, 1992 U.S. District Judge H. Lee Sarokin delineated the aggravating factors in the instant offense that were not adequately reflected in guideline computation, and which afforded a substantial basis for upward departure. The Court noted that the "relevant conduct" in this case began with the armed robbery of a getaway car in Baltimore, Maryland on May 25, 1991, and culminated in the two separate armed robberies in Jersey City on May 28, 1991 and May 29, 1991, one of which resulted in the shooting of the proprietor of a liquor store. This was followed by the bank robbery, high speed chase, bus accident and shoot out with Jersey City Police. Although the Court noted that those pending charges were yet unadjudicated, there was a recognition that Jefferson would in all likelihood enter a plea agreement with local Hudson County authorities, which would result in conviction and sentence on at least two of the four charges.

The Court additionally noted that the guideline computation failed to consider the number of victims that were present in the bank; the computation was based on a single victim, and did not consider the additional seven that were traumatized.

The Court additionally determined that the continuum of criminal conduct, which began with the armed robbery of the car in Baltimore was not addressed in guideline computation. It is noted that the state of New Jersey conviction was based solely on the robbery(s) and shootout with police, but also did not address the additional aggravating behavioral factors.

Thus, the sentencing court determined that the upward departure of 210 months was based on 150 months on count two, and sixty months on count four, to run consecutive as mandated by the statute. In conclusion, it appears that the Court's intention in this case was that the federal sentence should run consecutive to the state sentence, in order to adequately sanction the entirety of the offense conduct.

I trust that this information will be helpful to you.

Very truly yours,

Maurine Rush-Blossfeld

By: Maurine Rush-Blossfeld
Senior U.S. Probation Officer

MRB/lr

Certified # [7005-0390-0001-6751-1365]

94 E 00766
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
N94-10-4-7
8

(59)

Copy

RECEIVED-CLERK
U.S. DISTRICT COURT

2006 MAR 16 A 11: 16

U.S. POST OFFICE and COURTHOUSE
P.O. BOX 419
NEWARK, NEW JERSEY 07101

Date: March 5, 2006

RE: [UNITED STATES of AMERICA v.
RICHARD JEFFERSON
CASE NUMBER 91-266]

Dear Clear of Court:

Intro.-- I am Richard Jefferson, defendant, in the above captioned case # 91-266. The Nature of offense was Bank Robbery, Possession of a firearm in the Commission of a Bank Robbery, concluding on or about May 30, 1991, before Hon. H. Lee Sarokin.

Request-- I humbly request one (1) copy of my plea agreement in case # 91-266. Also, I request one copy of procedure transcripts in above case matter; especially the sentencing Court's transcript during imposition of sentence on September 9, 1992.

55

Conclusion

In order to regain adequate access into Court, I need the foregoing requested material. Please notify me ASAP regarding additional information needed and/or procedures. Your prompt response is very appreciated.

Respectfully submitted,

[signature]

Richard Jefferson
Reg. # 14921-050
UNITED STATES PENITENTIARY
BIG SANDY
P.O. Box 2068
Inez, Ky 41224

Defendant's Soc. Sec. N.:
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

Defendant's Date of Birth:
3-18-66

Dear Mr. Jefferson,

at present, your case file is in our National Archives + Records Center in Lee's Summit Missouri. We are going to have to order this file. This is to inform you that there is a $45.00 retrieval fee involved. Just return this cover letter with a Money Order payable to "Clerk, U.S. District Court for $45.00."

(continued on back)

(56)

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP '98
**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) Case Mang. | DATE: March 18, 2006 |
|---|---|
| FROM: Richard Jefferson | REGISTER NO.: 14921-050 |
| WORK ASSIGNMENT: Comp. | UNIT: C2 115 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.) "Access - Court - Info."

(1) In order to gain access to federal Court that sentenced me, I need the address of Court of New Jersey. Also, please provide Clerk of Court name and phone number. (2) In order to gain access to State Court that sentenced me. I need the address of Court of New Jersey. See State Parole Certificate of Parole; Criminal Clerk's contact at: (201) 795-6121, Hudson Co. Court.

Thank You

(Do not write below this line)

DISPOSITION:

New Jersey District Court
4015 Martin Luther King, Jr,
Federal Bldg + United States Courthouse
50 Walnut Street
Newark, NJ 07102

| Signature Staff Member | Date 3-21-06 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

59

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) Harper (ISM) | DATE: April 15, 2006 |
|---|---|
| FROM: Richard Jefferson | REGISTER NO.: 14921-050 |
| WORK ASSIGNMENT: Comp. | UNIT: C2-115 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Request copies of the following:

(1) letter from the U.S. District Court to response to my request of Nunc Pro Tunc, which states agreement of consecutive sentence.
(2) the name of, and Court address of said judge.
(3) The BOP's interpretation of consecutive sentence denying Nunc Pro Tunc.
(4) I appreciate your prompt response, in that time is essence!

(Do not write below this line)

DISPOSITION:

(1) A response from the US District Court is generated from the region and forwarded to the sentencing Court. The Court responds to the Region of which filed. The region will forward a letter of response to you in the event of a decision.
(2) You may review P.S. 5880.28 ~~Chapter~~ N-03 - page 1-3 / 08 sentence category. The sentence comp manual for consecutive sentence are based on decision from court decisions of denying Nunc Pro Tunc are based on decision from court not BOP, and or 5880.28 sentence comp manual policy (see also Barden v Keohane 921 F.2d 476 3rd Cir.)

Signature Staff Member | Date

ISM will not provide an address for said Judge ! You may [illegible] the [illegible] filing date or seek from other staff who may possibly assist!

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

(4) Thank you for your [illegible]

Harper ISM 4-19-06

Printed on Recycled Paper

(58)

U.S. POST OFFICE and COURTHOUSE
P.O. BOX 419
NEWARK, NEW JERSEY 07101

Date: June 1, 2006

RE: UNITED STATES OF AMERICA v. RICHARD JEFFERSON / Case #91-266
re: FREEDOM OF INFORMATION

Dear Clerk of Court:

I am, Richard Jefferson, defendant in the above captioned case # 91-266. I have requested, by informal letter, dated March 5 2006, copies of the following: (1) plea agreement; (2) procedural transcripts; (3) especially transcripts of September 9, 1992 imposition of sentence. Said request was received by Clerk, U.S. District Court, March 16, 2006, 11:16 am. ... Response was made to the effect that records were in National Archives + Record Center, and that it cost to retrieve. Please provide address to Archive in Lee's Summit Missouri.

A Freedom Of Information Act Request was prepared and dated March 26, 2006, for All Transcripts In Criminal Matter (relative to above titled case). Varification of said request was made by U.S.P.-Big Sandy's, Case Manager, Ms. Fultz, dated and mailed April 6, 2006. Also attached to FOIA was my Prison Account Statement and Informa Pauperis. To-date, there has been no response hereto, nor receipt acknowledgement.

CONT. OVER Pg 2 of 2

59

Please Take Notice: Pursuant to Title 5 USC §552(6)(1)(1); 10 day response upon receipt of request has expired approximately 60 days. That the request ~~has~~ of information deals directly with requestor, having no confidentiality/Exemptions; and the material is needed to gain adequate access into Court. dealing with requestor's unlawful incarceration.

I pray that you consider the foregoing and promptly respond to my request or submit your reason(s) for the long delay and/or denial.

Respectfully submitted

[signature]

Richard Jefferson
#14921-050
USP Big Sandy
P.O. Box 2068
Inez, Ky 41224

CC: file

(60)

U.S. POST OFFICE and COURTHOUSE
P.O. BOX 419
NEWARK, NEW JERSEY 07101

RECEIVED-CLERK
U.S. DISTRICT COURT
2006 NOV 13 A 10: 29

Date: November 7, 2006

RE: [UNITED STATES OF AMERICA V.
RICHARD SELVIS JEFFERSON
CASE NUMBER 91-266]

Dear Clerk of Court:

I am Richard Jefferson, fed. Reg. No.: 14921-050, defendant in the above captioned case # 91-266. I am currently housed at the United States Penitentiary-Big Sandy, Inez, Kentucky-41224-2068.

I humbly request the name and location of assigned Judge to my case. The previously assigned Judge was The Honorable H. Lee Sarokin (who retired from the bench).

Thank you Kindly!

Respectfully,
[signature]



## Other Documents

2:91-cr-00266 USA v. GARLAND, et al **CASE CLOSED on 09/09/1992**

**U.S. District Court**

**District of New Jersey [LIVE]**

Notice of Electronic Filing

The following transaction was received from jn, entered on 1/5/2007 at 10:22 AM EST and filed on 11/13/2006

**Case Name:** USA v. GARLAND, et al
**Case Number:** 2:91-cr-266
**Filer:**
**Document Number:** 1

**Docket Text:**
Letter from Richard Jefferson re: name of judge who replaced the Hon. H.L. Sarokin as judge on his case. Reply: judge has not been assigned, if there is something that needs to be filed a judge will be assigned when documents are recieved. (jn, )

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1046708974 [Date=1/5/2007] [FileNumber=1735806-0] [aaaa133d10cf12a2a53531f4549e057025af1131ff395abd611fd7f30d3e4f20efc1 61fd6cc86eca0395912a94e20940c4559d5ab6b4b06a35f3835f72eeef8c]]

**2:91-cr-266-2 Notice will be electronically mailed to:**

**2:91-cr-266-2 Notice will be delivered by other means to:**

RICHARD S JEFFERSON
#14921-050
U.S.P. BIG SANDY
P.O. BOX 2068
INEZ, KY 41224

(62)

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED OMB NO. 1105-0008 EXPIRES 8-31-91

**1. Submit To Appropriate Federal Agency:**
FEDERAL BUREAU OF PRISONS
320 First Street, N.W.
Washington, D.C. 20534
GENERAL COUNSEL, ET AL

**2. Name, Address of claimant and claimant's personal representative, if any.** (See instructions on reverse.) (Number, street, city, State and Zip Code)
Richard S. Jefferson #14921-050
FCI-Beckley, P.O. Box 350
Beaver, West Virginia 25813

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| | 3-18-66 | Single | March 4, 2003 - Dec. 2007 | |

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

The Claimant is illegally being detained by the United States Justice Department under the guise of Bureau of Prisons throughout the several States. Serving a State concurrent sentence to federal sentence, claimant was to be released on Parole March 4 2003. However, the Bureau of Prisons, in wrongly applying laws and policies, has failed to acknowledge its authority to fix the problem, and release the claimant from custody. Rather, the BOP has rendered State Court Judge's CONCURRENT ORDER MEANINGLESS!

SEE ATTACHED

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)
N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)
N/A

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

See Page 4 of Attachment

**11. WITNESSES**

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| | |

**12.** (See instructions on reverse) **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| | $2,150,400,000 | | $2,150,400,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Richard S. Jefferson [signature] | | 12-13-2007 |

**CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM**
The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.)

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**
Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.)

95-108
Previous editions not usable.

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

28 USC § 2241 (5:07-cv-00991)

63

FEDERAL BUREAU OF PRISONS
320 First Street, N.W.
Washington, D.C. 20534

ATTACHMENT

DATE OF CLAIM: 12-13-2007

GENERAL COUNSEL ATTN:

**RE: FEDERAL TORT CLAIM**

This is a complaint that allege I am being illegally detained by the United States Justice Department, via the Bureau of Prison throughout the United States.

As a proximate result of Bureau of Prisons use of inaccurate information, and misapplication of Statue/policies, the claimant was denied immediate release from incarceration, in violation of the Eighth Amendment US Constitution, and FOIA, 5 Section 552a (a)(4), (e)(5), (g)(1)(C), and (g)(5).

**Brief Criminal History:**

On May 30, 1991, the claimant was arrested by New Jersey State Authorities, resulting in the final charges of Attempted Murder, and two-counts of Armed Robbery.

On June 20, 1991, the US Marshal Service "borrowed" the claimant pursuant to a Federal Writ of Habeas Corpus Ad-prosequendum on the related offense of Armed Bank Robbery.

Cert. Mail # 7003-2260-0000-6782-6728

(64)

On September 9, 1992, the claimant was convicted of Bank Robbery and Possession of a Firearm in Commission of a Bank Robbery. Thereafter sentenced to 210-months imprisonment,

The Federal Court Judge, H. Lee Sarokin (now retired) was aware of claimant being afforded State concurrent sentences to run concurrent to federal sentences, and thereby, sanctioned claimant with an upward departure based on criminal history of state offenses.

The Federal Judge also stated that claimant "...will be moved, I would expect in the near future, out of the local jail. You will be put in a federal prison."

On April 28, 1993, claimant was sentenced by State Court judge to a term of 20-years - 10-years parole ineligibility, and to run concurrent (fully) with federal term of 210-months.

On March 4, 2003, the claimant was released from East Jersey State Prison, Rahway, New Jersey, by way of Parole Board, unbeknown to claimant, the US Marshals mistakenly lodged a detainer against him.

On March 31, 2003, the claimant was delivered to FCI-Schuylkill, Penn., for the service of 210-months federal term to commence; projected release date 2018 or maximum 2020.

Since the State terms were ran concurrent with the federal terms, the two terminated about the same time. Never the less, the claimant remains incarcerated as of December 2007, at FCI-Beckley, West Virginia, and on a sentence that **has already been served**.

65

**Administrative Remedies:**

On April 19, 2003, claimant requested a Nunc Pro Tunc with the FCI Records' Department, and was related that NorthEast Region would respond to request directly.

On letter dated October 23, 2003, NorthEast Region denied request based on inaccurate information from Probation Department dated October 14, 2003.

The claimant continued to file remedies, without resolve, and directed back to letter dated October 23, 2003 (above). The claimant was relocated at five (5) BOP institutions. No staff, working under the color of law, and authority of the Bureau of Prisons, United States Justice Department, granted claimant a fair and impartial reviewing of his plight.

Dated March 30, 2006, the claimant filed a BP-8 stating his illegal incarceration, the facts as stated herein, his immediate release and compensation for his pains and suffering: $1,400,000.00, per day, amount owed and due. The BP-8 was denied and related back to the inaccurate information, obtained from records in claimant's name and identification.

The Warden received a BP-9 from claimant, based on the same, and denied, using the same inaccurate information from the probation office, and adopting some inaccurate information of her own: "You were further sentenced in the state of New Jersey on a state parole violation to a term of 20 years to run con-

(66)

current with the federal sentence, imposed on April 28, 1993."

Claimant filed a BP-10, dated May 3, 2006, advising to designate the state facility for service of his federal sentence imposed "1992" satisfying state concurrent to federal sentences. The appeal was denied based on all inaccurate information.

The claimant filed a BP-11, dated September 15, 2006, which was denied based on the inaccurate information, once again, that came from the parole office.

The claimant at that point did exhaust his administrative remedies, but before having an opportunity to file this complaint, and his habeas corpus, he was transferred, yet again.

Extent of injury:
The contractual plea agreement between claimant and the United State, in the State of New Jersey, has been breached by employees acting in the scope of their employment, under the color of federal law. Denial of Nunc Pro Tunc, which would afford the claimant immediate release has been wrongly denied based on inaccurate information, has caused the State Court Judge's concurrent ORDER to be rendered <u>MEANINGLESS</u>.

Thus, claimant was caused injury, offending the Eighth Amendment, US Constitution; Title 5 Section 552a(a)(4), (e)(5), (g)(1)(C), (g)(5), did cause claimant adversity in BOP determinations.

See Exhibits 84-90



For the foregoing reasons, the claimant is entitled to immediate release, and compensation in the amount, owed and due, $1.4 mil, day; $2,150,400,000.

The claimant asserts, that the facts are clear, and correct, to the best of his ability. And that if any portions herein is willing and knowingly false, claimant may be subjected to the penalties of perjury, 1746.

Respectfully submitted,

Dated: Dec 17, 2007

Richard Selvis Jefferson
Fed.Reg.No.: 14921-050
Federal Correctional
Institution-Beckley
P.O. Box 350
Beaver, West Virginia
Zip Code - 25813

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

Richard S. Jefferson #14921-050

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Reciept Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here: BEAVER WV DEC 19 2007 USPS - 25813

7003 2260 0000 6782 6728

Sent To: General Counsel
Street, Apt. No.; or PO Box No.: FBOP 320 first St. N.W.
City, State, ZIP+4: Washington, DC 20534

PS Form 3800, June 2002 See Reverse for Instructions



68

**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

*U.S. Custom House*
*2nd & Chestnut Streets - 7th Floor*
*Philadelphia, PA. 19106*

February 4, 2008

Richard Jefferson
Reg. No. 14921-050
FCI Beckley
P. O. Box 350
Beaver, WV 25813

Re: Your Administrative Tort Claim Received December 27, 2007
Claim No. TRT-NER-2008-01955

Dear Mr. Jefferson:

This is to advise you that the administrative tort claim that you submitted to this office is being forwarded to the office listed below, as this claim does not fall within the jurisdiction of the Federal Bureau of Prisons' Northeast Regional Office.

You should address any future correspondence to the office listed below:

Michelle Fuseyamore, Regional Counsel
Mid-Atlantic Regional Office
Federal Bureau of Prisons
302 Sentinel Drive, Suite 200
Annapolis Junction, MD 20701

Sincerely,

D. Kostyk
for Henry J. Sadowski
Regional Counsel

cc: Michelle Fuseyamore, Regional Counsel
w/attachments



69

**U.S. Department of Justice**

Federal Bureau of Prisons

*Beckley Consolidated Legal Center*

*1600 Industrial Park Road, P.O. Box 1280*
*Beaver, West Virginia 25813*
*(304) 252-9758 (304) 256-4928 Facsimile*

March 6, 2008

Richard Jefferson
Reg. No. 14921-050
FCI Beckley
P.O. Box 350
Beaver, West Virginia 25813

Re: Administrative Tort Claim Number TRT-NER-2008-01955

Dear Mr. Jefferson:

This will acknowledge receipt on February 6, 2008, of your administrative tort claim for personal injury at FCI Beckley beginning on March 4, 2003 through December 2007. You claim a sum certain of $2,150, 400,000.00.

Under the provisions of the Federal Tort Claims Act, 28 U.S.C.§2675, we have six months from the date of receipt of your claim in this office to review, consider, and adjudicate your claim.

Should your claim include an allegation of loss of or damage to personal property, pursuant to 28 C.F.R., §14.4©, you are required to include with your claim an itemized list of the property lost or damaged. If possible, for each item, please state its value, date and place of purchase. If the property was purchased in a Federal institution, submit the commissary receipt. If the property was not purchased in a Federal institution, submit a copy of the receipt of purchase. If you do not have a receipt please state as such, and list the place purchased, for example: name of store, address, state, date and cost for each item alleged lost or damaged. Failure to respond within 30 days of this letter will delay the investigation of your claim. ***If you have already included the above information and receipts, please do not re-submit.***

All correspondence regarding this claim should be forwarded to the Beckley Legal Center at FCI Beckley. When corresponding with this office regarding this tort claim please refer to the above tort claim number. If you have any questions about the status of your claim or if the circumstances surrounding this claim change in any fashion, contact this office immediately. **Also, should your address change, please advise accordingly**.

Sincerely,

Debbie Stevens
Supervisory Attorney
Consolidated Legal Center, Beckley





**U.S. Department of Justice**

Federal Bureau of Prisons

*Beckley Consolidated Legal Center*

*1600 Industrial Park Road, P.O. Box 1280*
*Beaver, West Virginia 25813*

June 30, 2008

Richard Jefferson
Reg. No. 14921-050
FCI Beckley
P.O. Box 350
Beaver, West Virginia 25813

Re: Your Tort Claim No. TRT-MXR-2008-01955

Dear Mr. Jefferson:

Your claim has been considered for administrative settlement under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et. seq*., and authority granted under 28 C.F.R. § 0.172. You claim government liability in the amount of $2,150,400,000.00. Specifically, you allege that you are being illegally detained by the United States Justice Department under the guise of the Bureau of Prisons. Additionally, you allege your previously imposed state sentences were concurrent to your federal sentence, and that all of your sentences should have been complete on your state parole date of March 4, 2003.

An investigation reveals that you were arrested by New Jersey state authorities on May 30, 1991. While awaiting trial for the state charges, you were removed via federal writ ad pros by the U.S. Marshals on several occasions. On September 9, 1992, in U.S. District Court, New Jersey, you received a 210 month term of imprisonment for the offenses of Bank Robbery and Possession of a Firearm in the Commission of a Bank Robbery.

You were subsequently returned to state custody and sentenced on April 28, 1993, to a term of 20 years - 10 years mandatory minimum to run concurrent to the previously imposed federal sentenced. You paroled from the state sentenced on February 28, 1993, to the federal detainer, which began the implementation of the federal sentence.

Your Judgment and Commitment Order is silent with regards to concurrent or consecutive not-yet-imposed state sentences, therefore your federal sentence is consecutive. Program Statement 5880.28, <u>Sentence Computation Manual (CCCA of 1984)</u>, states, "... if the court is silent as to multiple terms of imprisonment which are imposed at different times without the judge

specifying whether they are to run concurrently or consecutively, they will run consecutively..." By letter dated October 14, 2003, the U.S. Probation for the District of New Jersey noted its agreement with the manner in which the Bureau of Prisons has interpreted your sentenced.

Additionally, you sought relief through the Administrative Remedy Process to obtain a Nunc Pro Tunc designation and/or Barden credit in 2003, and were denied at all three administrative remedy levels.

Based on the above, your sentence computation is accurately computed. Accordingly, your claim is denied. This is a final denial of your claim. If you are not satisfied with this determination, you have six months from the date of this letter to bring suit in an appropriate United States District Court, should you wish to do so.

Sincerely,

Debbie Stevens
Supervisory Attorney

for:

Michelle T. Fuseyamore
Regional Counsel

cover protected speech. Section 12(c), for example, provides:

> The expressing of any views, arguments, or opinions, or the dissemination thereof, whether in written, printed, graphics, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Subtitle, if such expression contains no threat of reprisal or force or promise of benefit, or misrepresentation of fact.[12]

At worst, § 2(*o*) is similar to other provisions that the Supreme Court has refused to assess for some marginal overbreadth, in that "the 'remainder of the statute ... covers a whole range of easily identifiable and constitutionally ... proscribable conduct....'" *Parker v. Levy*, 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974) (quoting *United States Civil Service Commission v. National Ass'n of Letter Carriers*, 413 U.S. 548, 580–81, 93 S.Ct. 2880, 2898, 37 L.Ed.2d 796 (1973)).

The judicial reluctance to reach overbreadth claims appears especially high in cases such as this, where the provision *has never been applied* to *any* conduct. Overbreadth is usually invoked by persons against whom a statute has been *constitutionally* applied, to "challenge that statute on the ground that it may conceivably be applied unconstitutionally to others," *Broadrick v. Oklahoma*, 413 U.S. at 610, 93 S.Ct. at 2915. Here by contrast, the no-strike provision has never been litigated, either by the arbitration panel[13] in adjudicating an unfair labor practice claim or by the Virginia courts to enforce the panel's order. Either body is likely to read § 2(*o*) so as to exclude any burden on protected activities. In *Board of Trustees v. Fox*, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), the Court cautioned against extensions of "overbreadth doctrine from a necessary means of vindicating the plaintiff's own right not to be bound by a statute that is unconstitutional into a means of mounting gratuitous wholesale attacks upon state and federal laws", attacks whose resolution would require "consideration of many more applications than those immediately before the court." *Id.* at 485, 109 S.Ct. at 3037; see also *National Treasury Employees Union v. Kurtz*, 600 F.2d 984, 989 (D.C.Cir.1979). Although overbreadth claims may sometimes be resolved even before the court makes any assessment of the provision as applied, as in *Board of Airport Commissioners v. Jews for Jesus, Inc.*, 482 U.S. 569, 571, 107 S.Ct. 2568, 2570, 96 L.Ed.2d 500 (1987), there the statute was *clearly* substantially overbroad, because it banned all "First Amendment activities" in the Los Angeles Airport, and the Court did not think it susceptible of a narrowing construction. See 482 U.S. at 575–76, 107 S.Ct. at 2572–73. Section 2(*o*) is not nearly so broad, as it refers mainly to traditional strikes, work stoppages, and similar concerted action. Accordingly, we do not address the possibly unconstitutional readings of the strike ban.

We further note our doubts whether, in the absence of some *threat* that the Authority may seek to apply § 2(*o*) to plaintiffs' protected speech, they even have standing to raise the claim. Cf. *Laird v. Tatum*, 408 U.S. 1, 14, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1972). As Judge Bazelon wrote in *National Student Ass'n, Inc. v. Hershey*, 412 F.2d 1103 (D.C.Cir.1969), "[W]e are not persuaded that every plaintiff who alleges a First Amendment chilling effect and shivers in court has thereby established a case or controversy." *Id.* at 1113–14. See also *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1378–80 (D.C.Cir.1984) (pointing out that Supreme Court cases relying upon "chilling effect" cite it as the *reason* to invalidate a statute, not as the *harm* that entitles the plaintiff to challenge it) (Scalia, J.); *American Library Ass'n v. Barr*, 956 F.2d 1178, 1193 (D.C.Cir.1992).

*Miscellaneous:* Plaintiffs point to an array of labor code provisions, such as § 12's ban on unfair labor practices, and contend that they are inconsistent with the Transfer Act. See Petitioners' Brief at 46–48, 51. All of these claims either depend on plaintiffs' notion that in transferring rights the Act somehow redefined them so as to remove all their pre-existing limitations or on a complete disregard of the reality of pre-existing law. None has merit.

Finally, we agree with the district court that the question whether jurisdiction over representation and unfair labor practice matters properly lies in Virginia courts is not yet ripe for decision. See *Federal Firefighters Ass'n II*, 723 F.Supp. at 827. Section 7(e) of the Labor Code, cited by the union, does not even specify which courts shall have jurisdiction over legal challenges to representation decisions; it merely provides that "[d]ecisions of the Panel on Representation Matters shall not be subject to court review, except with respect to unit determinations that are alleged to be contrary to law". As to § 13(e) of the Code, it authorizes a complaining party to petition the Virginia courts for enforcement of unfair labor practice decisions by the Authority's arbitration panel; it is unclear whether there are any circumstances under which this clause would have any effect. Cf. *Federal Firefighters Ass'n II*, 723 F.Supp. at 827 (noting that the Authority's assertion alone could not oust a federal court of otherwise available jurisdiction).

Accordingly, we affirm the judgment of the district court in all respects.

*So ordered.*

12. Section 12 does not completely resolve the issue, however. It refers only to unfair labor practices, while other provisions implicate § 2(*o*)'s definition, such as § 15(b) (prohibiting persons who "participate[ ] in a strike against MWAA" from accepting or holding positions in MWAA).

13. Section 4 of the labor code provided for an arbitration panel composed of members chosen by the Authority, and the district court held that the selection method did not reasonably replicate the pre-transfer dispute resolution mechanisms. See *Federal Firefighters' Ass'n II*, 723 F.Supp. at 827. The district court directed the parties to submit a proposed order providing for transition to an independent, bipartisan dispute resolution panel, *id.*, and subsequently issued an order with that effect. See Order (D.D.C. Oct. 30, 1989).

(72)

**W. Foster SELLERS, Appellant,**

**v.**

**BUREAU OF PRISONS, et al., Appellees.**

**No. 90–5197.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 21, 1991.

Decided March 27, 1992.

Inmate filed action under Privacy Act against Bureau of Prisons and Parole Commission, claiming that agencies maintained incorrect information in inmate's files. The United States District Court for the District of Columbia, Charles R. Richey, J., granted summary judgment for agencies. Inmate appealed. The Court of Appeals, Mikva, Chief Judge, held that agencies did not meet requirements of Privacy Act by indicating that inmate disputed information in his files.

Reversed and remanded.

Opinion, 952 F.2d 1423, superseded.

**1. Federal Courts ⟹13**

Parole Commission's determination that inmate would have been denied parole even absent consideration of bank robbery which was erroneously included in presentence report did not render moot inmate's Privacy Act claims; inmate claimed that Bureau of Prisons used report in making decisions adverse to him and that there were other pieces of incorrect information in his prison files that both Bureau and Commission used in making decisions adverse to him.

**2. Federal Courts ⟹12**

Intervening event renders case "moot" if interim relief or events have completely and irrevocably eradicated effects of alleged violation and there is no reasonable expectation that alleged violation will re-

(73)

cur. 5 U.S.C.A. § 552a(e)(5), (g)(1)(C), (g)(4).

See publication Words and Phrases for other judicial constructions and definitions.

**3. Records** ⟹31

Bureau of Prisons and Parole Commission did not satisfy requirements of Privacy Act by simply noting in inmate's files that he disputed some of information contained therein; challenged information was capable of being verified. 5 U.S.C.A. § 552a(e)(5), (g)(1)(C), (g)(4).

**4. Records** ⟹31

As long as information contained in agency's files is capable of being verified, then, under Privacy Act, agency must take reasonable steps to maintain accuracy of information to assure fairness to individual and, if agency willfully or intentionally fails to maintain its records in that way, and consequently makes determination adverse to individual, it will be liable to that person for money damages. 5 U.S.C.A. § 552a(e)(5), (g)(1)(C), (g)(4).

---

Appeal from the United States District Court for the District of Columbia Civ. No. 87-2048.

Julie M. Carpenter (appointed by the Court) with whom David W. DeBruin was on the brief, for amicus curiae urging that the judgment of the District Court be reversed. W. Foster Sellers, pro se, also entered an appearance for appellant.

William J. Dempster, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellees.

Before: MIKVA, Chief Judge, WALD and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

Appellant, W. Foster Sellers, filed an action under the Privacy Act against the Bureau of Prisons and the Parole Commission claiming that the agencies maintained incorrect information in his inmate files. Mr. Sellers sought amendment of his records and money damages, contending that the agencies violated sections (e)(5), (g)(1)(C), and (g)(4) of the Act by using the incorrect information in determinations adverse to him. Relying on this Court's decision in *Doe v. United States,* 821 F.2d 694, 701 (D.C.Cir.1987), the United States District Court for the District of Columbia granted appellees' motion for summary judgment, holding that the agencies satisfied the requirements of the Privacy Act simply by noting in Mr. Sellers's prison records that he disputed the information contained in the records. We reverse the district court and remand for further consideration of Mr. Sellers's claims. The agencies do not meet the Act's requirements by indicating that the appellant disputes the information in his prison files.

## I. Background

In 1986, while an inmate in federal prison, Mr. Sellers asked to see two presentence reports held in his files at the Parole Commission and the Bureau of Prisons. Mr. Sellers alleged that the presentence reports contained inaccuracies; specifically, one of the reports, prepared in 1979, contained a reference to an alleged bank robbery in North Carolina. Appellant claimed that the bank robbery charge had subsequently been dismissed.

After he contacted the probation office that prepared the 1979 presentence report, Mr. Sellers was told that the office erroneously submitted the report and had asked the Parole Commission and the Bureau of Prisons to return it without considering it. But neither agency returned the report. Instead, the Parole Commission used the report when it denied Mr. Sellers's parole in October of 1986. Furthermore, Mr. Sellers claims that the Bureau of Prisons used the 1979 presentence report in making decisions adverse to him.

In 1987, Mr. Sellers filed a complaint in the United States District Court for the District of Columbia claiming, *inter alia,* that the Bureau of Prisons, the Parole

Commission, and two individual defendants violated the Privacy Act, 5 U.S.C. § 552a(e)(5) and (g)(1)(C), by failing to maintain accurate records, and § 552a(d) and (g)(1)(A) by failing to amend inaccurate files. His complaint alleged that the Parole Commission used the 1979 presentence report in its decision denying him parole in 1986. The complaint also claimed that the allegedly erroneous presentence report adversely affected determinations by the Bureau of Prisons regarding custody and security classifications; job and quarters assignments, and the opportunity to earn money and good time. In addition to the claims surrounding the 1979 presentence report, the complaint further alleged that other inaccuracies in Mr. Sellers's prison records resulted in decisions adverse to him. Mr. Sellers sought both amendment of his records and money damages.

The district court dismissed Mr. Sellers's complaint, holding that appellees' systems of records were exempt from the amendment provisions of the Privacy Act. *Sellers v. Bureau of Prisons,* No. 87-2048, slip op. at 1, 1988 WL 105007 (D.D.C. Sept. 29, 1988). The district court also dismissed the claims against the two individual defendants and transferred Mr. Sellers's *habeas* claims to the Illinois judicial district in which he was incarcerated at the time. *Id.*

This Court summarily affirmed the district court's order dismissing the two individual defendants and the Privacy Act claim under section 552a(d). *Sellers v. Bureau of Prisons,* No. 88-5369, slip op. at 1 (D.C.Cir. June 13, 1989). The Court remanded Mr. Sellers's Privacy Act claim under section 552a(e)(5), however, holding that regulations governing the Bureau of Prisons and the Parole Commission do not exempt those agencies' records from section (e)(5) of the Act. Accordingly, this Court remanded the section (e)(5) claims to the district court "to determine whether Sellers presented a cause of action by claiming that the Bureau of Prisons and the Parole Commission violated the Section 552a(e)(5) requirement to maintain accurate records." *Id.*

Seeing its task on remand as that of deciding the "very narrow question ... whether the file defendants compiled on plaintiff when they determined his parole eligibility in October, 1986 was in compliance with the Privacy Act's requirement[s]," the district court granted summary judgment in favor of appellees. *Sellers v. Bureau of Prisons,* No. 87-2048, slip op. at 1, 3 (D.D.C. May 14, 1990). Citing this Court's decision in *Doe v. United States,* 821 F.2d 694, 701 (D.C.Cir.1987) (en banc), the court held that since it could not require appellees to amend their records, it was sufficient that the Parole Commission noted in Mr. Sellers's file that he disputed the information contained in his records. The district court did not, however, address Mr. Sellers's claim against the Bureau of Prisons for using the allegedly erroneous presentence report in its decisions. Nor did the court determine the viability of the claims surrounding the allegedly inaccurate information other than the 1979 presentence report.

Mr. Sellers again appeals the district court's decision. This Court denied the agencies' motion for summary affirmance. *See Sellers v. Bureau of Prisons,* No. 90-5197, slip. op. at 1, 1991 WL 56314 (D.C.Cir. Apr. 15, 1991).

## II. Analysis

### A. *Mootness*

[1] On June 29, 1989, the Parole Commission reviewed Mr. Sellers's file and his claim that the incorrect presentence report was improperly considered in his parole decision. Agreeing that the North Carolina bank robbery should not have been considered, the Commission modified Mr. Sellers's offense severity and guideline range. The Commission determined, however, that the changes in severity and guideline range did not warrant modification of its decision to deny parole. Appellees now argue that because the presence of the bank robbery in the presentence report did not ultimately affect the Commission's parole decision, this case is moot.



Case 1:08-cv-01473-HHK Document 1-3 Filed 08/26/2008 Page 75 of 91

(74)

[2] An intervening event renders a case moot if (1) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation; and (2) there is no reasonable expectation that the alleged violation will recur. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Here we cannot say that the Parole Commission's later decision that it would have denied Mr. Sellers's parole absent consideration of the 1979 presentence report "completely and irrevocably eradicated" the effects of both agencies' alleged violations.

We pause here to point out that there are actually four different claims at issue in this lawsuit. In addition to his claim against the Parole Commission for using the allegedly erroneous presentence report in denying him parole, Mr. Sellers also claims that the Bureau of Prisons used that report in making decisions adverse to him concerning custody and security classifications, job and quarters assignments, and the opportunity to earn money and good time. Furthermore, the appellant asserts that there were other pieces of incorrect information in his prison files that *both* the Bureau of Prisons and the Parole Commission used in making determinations adverse to him.

Appellees contend that this case is moot because the Parole Commission later decided that it would have denied Mr. Sellers's parole absent consideration of the North Carolina bank robbery. Apparently, appellees misconstrue the nature and extent of Mr. Sellers's complaint. As we explained above, Mr. Sellers's Privacy Act claims challenge more than just the Parole Commission's use of the North Carolina bank robbery in denying him parole; Mr. Sellers claims that the entire 1979 presentence report was improperly used in that decision. Furthermore, Mr. Sellers contends that both the Parole Commission and the Bureau of Prisons used the 1979 report, as well as other erroneous information maintained in his files, to make other determinations adverse to him.

Therefore, even assuming that the Parole Commission's later decision concerning the North Carolina bank robbery affected Mr. Sellers's claims against the Commission concerning its parole decision, it in no way affected his remaining claims against the Commission. Nor did it affect his claims against the Bureau of Prisons. Because these claims remain viable despite the Parole Commission's later decision, this case is not moot.

B. *The Privacy Act Claims*

We now turn to appellant's argument that the district court erred in granting summary judgment in favor of the Parole Commission and the Bureau of Prisons. We review a grant of summary judgment *de novo. Nikoi v. Attorney General of the United States,* 939 F.2d 1065, 1068 (D.C.Cir.1991). In reviewing such a decision, we must ensure that the district court did not overlook or improperly resolve any disputed issues of fact, and that it correctly applied the relevant law to the undisputed facts. *Abourezk v. New York Airlines, Inc.,* 895 F.2d 1456, 1458 (D.C.Cir.1990).

At issue in this appeal are sections (e)(5), (g)(1)(C), and (g)(4) of the Privacy Act. Section (e)(5) provides that each agency that keeps a system of records must "maintain all records ... with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). Section (g) of the Act provides civil remedies for violations of section (e)(5). In particular, section (g)(1)(C) permits a civil action if an agency "fails to maintain any record concerning any individual ... and consequently a determination is made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C). And section (g)(4) provides that in any action brought under section (g)(1)(C), "in which the court determines that the agency acted in a manner which was intentional or willful," the United States shall be liable for actual damages sustained by the individual not less than $1,000 as well as litigation costs and attorneys' fees. 5 U.S.C. § 552a(g)(4).

[3] Mr. Sellers's complaint alleges that the Parole Commission and the Bureau of Prisons used the erroneous presentence report, as well as other erroneous information contained in his files, to make determinations adverse to him in violation of sections (e)(5), (g)(1)(C), and (g)(4) of the Act. Appellant argues that, as a result, he is entitled to money damages and attorneys' fees. The district court, citing our decision in *Doe v. United States,* 821 F.2d 694, 701 (D.C.Cir.1987) (en banc), rejected Mr. Sellers's claims, holding that since it could not require appellees to amend their records, it was sufficient that the agencies noted in Mr. Sellers's files that he disputed the information contained in the presentence report. *Sellers v. Bureau of Prisons,* No. 87-2048, slip op. at 1, 3 (D.D.C. May 14, 1990). We think the district court misconstrued our holding in *Doe.*

*Doe* involved a claim by a public employee against the Department of State under the Privacy Act. The employee's records at the Department contained a report by a special agent that described an interview with her. Essentially, Doe claimed that the report attributed to her something that she never said. When Doe complained, the Department stated that it found no reason to question the accuracy of the agent's report but that it would include her version of the interview as part of the record "without affirming or denying her allegations." *Doe,* 821 F.2d at 697.

The employee brought an action against the Department of State seeking removal of the report from her employment records and money damages. *Id.* at 695. The district court granted summary judgment in favor of the State Department, holding that the Department satisfied its duties under the Act by supplementing the agent's report with the plaintiff's denials. *Id.* at 696. We upheld that decision.

We pointed out, however, that *Doe* was not the "typical" Privacy Act case. *Id.* at 699-700. In the typical case, we observed, "it is feasible, necessary, and proper, for the agency and, in turn, the district court to determine whether each filed item of information is accurate." *Id.* at 699. But because only the special agent and the employee were present when the interview in *Doe* took place, the State Department could not determine whether the disputed information in the agent's report was, indeed, accurate. Consequently, we allowed the Department to satisfy its burden under the Privacy Act by including in the employee's file the employee's version of the conversation between her and the agent. *Id.* at 701.

Later in *Strang v. United States Arms Control & Disarmament Agency,* 864 F.2d 859 (D.C.Cir.1989), we further explained the narrow reach of our decision in *Doe.* In *Strang,* an employee of the Arms Control & Disarmament Agency brought an action against the agency under the Privacy Act seeking amendment of the agency's records as well as money damages. The agency's records contained several memoranda indicating that the employee improperly disclosed top secret documents to foreign officials. *Id.* at 860. On the basis of those memoranda, the agency suspended the employee for six months and stripped her of her "code word" security clearance. *Id.*

We held that the district court improperly granted summary judgment to the ACDA with respect to two of the memoranda which claimed that the employee gave certain foreign officials a document not cleared for dissemination. *Id.* at 865. Declining to apply our previous decision in *Doe,* we held that, in the context of those two documents, *Strang* presented a "typical" Privacy Act case because the facts at issue were clearly provable. *Id.* at 866. We cautioned that *Doe* was a "narrow decision" that "surely does not stand for the proposition ... that the district court need not determine definitively the accuracy of the agency's records, as long as the agency somehow can be said to have acted fairly." *Id.* Accordingly, we remanded to the district court for a *de novo* review of the parties' evidence to determine the accuracy of the challenged memoranda. *Id.* at 868.

We think that this case is more appropriately resolved under *Strang* than under *Doe.* As in *Strang,* the truth here was relatively easily ascertainable. First, with respect to the 1979 presentence report, the agencies needed only to determine whether that report was improperly submitted to



Case 1:08-cv-01473-HHK Document 1-3 Filed 08/26/2008 Page 76 of 91

(75)

them. To aid them in this determination, the Bureau of Prisons and the Parole Commission had three letters from the probation office in North Carolina that prepared the 1979 report: One to the appellant explaining that the report was erroneously submitted to the Parole Commission and one to both the Parole Commission and the Bureau of Prisons stating that the report was submitted in error and asking that the agencies return it. Furthermore, the agencies had the Parole Commission's later decision apparently conceding that the North Carolina bank robbery, which was part of the 1979 presentence report, was improperly considered as part of Mr. Sellers's parole decision.

[4] Appellees argue that this case is more like the "atypical" case in *Doe* than it is like the typical case in *Strang*. Appellees contend that they cannot be expected to verify conclusively the accuracy of their inmate files, especially files used as evidence in a parole decision, anytime an inmate challenges the information contained in those files. We disagree. As long as the information contained in an agency's files is capable of being verified, then, under sections (e)(5) and (g)(1)(C) of the Act, the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual. If the agency wilfully or intentionally fails to maintain its records in that way and, as a result, it makes a determination adverse to an individual, then it will be liable to that person for money damages.

Our holding in *Doe* applied "[o]nly when the Department had narrowed the controversy to *what Doe said*—as distinguished from what in fact existed in the world outside the Doe/Huges interview...." *Doe*, 821 F.2d at 700. Here the factual dispute had not been narrowed in such a manner. Therefore, the agencies did not satisfy the requirements of sections (e)(5) and (g)(1)(C) simply by noting that Mr. Sellers disputes the information in his prison files.

Appellees also argue that the other allegedly erroneous information, that concerning Mr. Sellers's escape attempt and disciplinary infractions in prison, was obtained from Prison Disciplinary Committee Reports which stated that Mr. Sellers had been found guilty of the incidents after being given an opportunity to refute the charges. If this is true, then perhaps appellees met the requirements of the Act with respect to those pieces of information. But we do not know exactly which pieces of information, other than the 1979 report, Mr. Sellers is challenging. The district court below did not address his claims other than those concerning the 1979 presentence report. In so limiting its focus on remand, the court below misunderstood the scope of our first remand in this case. Accordingly, we now make it clear that Mr. Sellers is entitled, on remand, to a determination whether the agencies met the requirements of sections (e)(5) and (g)(1)(C) of the Act with regard to *all* of the information he claims is incorrect in his files.

### III. Conclusion

The Privacy Act requires that each agency keeping a system of records must maintain those records with "such accuracy, relevance, timeliness, and completeness as is reasonably necessary" to assure fairness to an individual. 5 U.S.C. § 552a(e)(5). If an agency willfully or intentionally fails to maintain records in such a manner and, as a result, makes a determination adverse to an individual, it will be liable to that person for money damages. 5 U.S.C. §§ 552a(g)(1)(C) and (g)(4). Because the challenged information in Mr. Sellers's files was capable of being verified, the agency did not satisfy the requirements of the Privacy Act simply by noting in his files that he disputed some of the information the files contained. Therefore, we remand for the district court to determine whether the Bureau of Prisons and the Parole Commission wilfully or intentionally failed to maintain Mr. Sellers's records in accordance with sections (e)(5) and (g)(1)(C) of the Act. *See White v. Office of Personnel Management*, 787 F.2d 660 (D.C.Cir.1986) (in action for damages under Privacy Act, court must determine whether standard articulated under section (g)(1)(C) has been met).

*So Ordered.*

**Arthur D. JACOBS, Appellant,**

**v.**

**William P. BARR,* et al., Appellees.**

**No. 91-5061.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 6, 1991.
Decided March 27, 1992.

American of German ancestry who had been detained in internment camp during second World War brought action challenging, on equal protection grounds, a federal statute which provided compensation for Japanese Americans similarly detained. The United States District Court for the District of Columbia, John Garrett Penn, Chief Judge, held that plaintiff had no standing to pursue action, and plaintiff appealed. The Court of Appeals, Mikva, Chief Judge, held that: (1) plaintiff had standing to bring equal protection challenge, but (2) statute would survive even the strictest level of scrutiny.

So ordered.

**1. Constitutional Law ⚿42(2)**

To have standing in constitutional sense, plaintiffs must allege that they have suffered some actual or threatened injury, injury must be fairly traceable to challenged official conduct, and there must be substantial likelihood that alleged injuries will be redressed by judicial decision in plaintiffs' favor.

* Richard Thornburgh was Attorney General of the United States when Mr. Jacobs filed his complaint on March 9, 1989. William P. Barr is now Attorney General, and he has been substituted for Mr. Thornburgh under Fed. R.App.P. 43(c).

**2. Constitutional Law ⚿42.2(2)**

To have standing to challenge legislation on equal protection grounds, plaintiffs must allege that they are being denied equal treatment solely as result of classification they are challenging. U.S.C.A. Const.Amend. 14.

**3. Constitutional Law ⚿42.2(2)**

American of German ancestry who had been detained in internment camp during second World War had standing to challenge, as denial of his equal protection rights, a federal statute awarding compensation to Japanese Americans who had been similarly interned, without need to allege that he was interned for same reasons as Japanese Americans. U.S.C.A. Const.Amend. 14; Civil Liberties Act of 1988, § 101 et seq., 50 App.U.S.C.A. § 1989b et seq.

**4. Federal Civil Procedure ⚿1829**
**Federal Courts ⚿797**

In ruling on motion to dismiss for want of standing, both trial and reviewing courts must accept as true all material allegations of complaint and must construe complaint in favor of complaining party.

**5. Constitutional Law ⚿70.1(1)**

Although courts should not defer to Congress on constitutional questions, they should defer, or give great weight, to Congress on empirical questions.

**6. Constitutional Law ⚿215.2**
**War and National Emergency ⚿36**

Federal statute awarding compensation to Japanese Americans who had been detained in internment camps during World War II, but not awarding any compensation to Americans of German ancestry who had likewise been detained, did not violate the latter's equal protection rights, given evidence that Japanese Americans were interned solely on basis of race with no individualized hearings as to their loyalty; statute was narrowly tailored to compelling government interest of compensating Japa-

prosecutor could not comment on a defendant's failure to testify at trial because it imposed a penalty on his exercise of his fifth amendment privilege not to incriminate himself. 380 U.S. at 619, 85 S.Ct. at 1232. The Court did not look at the inhibitory effect of prosecutorial comment on defendants exercising the right generally. The Third Circuit described the proper inquiry to be "whether the particular *defendant* has been *harmed* by the state's use of the fact that he engaged in constitutionally protected conduct, not whether, for the particular defendant or for persons generally, the state's reference to such activity has or will *burden* the exercise of the constitutional *right*." *United States ex rel. Macon v. Yeager*, 476 F.2d 613, 616 (3rd Cir.), *cert. denied*, 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973) (emphasis in original).

In this case, we feel that adherence to the *Doyle* analysis is appropriate and that it requires us to send petitioner back to the state courts for retrial. Petitioner exercised his rights to remain silent and to request counsel. He did so in circumstances having no more probative value as to sanity than the circumstances in *Doyle* had as to guilt; in both situations the silence was "insolubly ambiguous." Petitioner exercised his rights to silence and to counsel after receiving the same implicit assurance Doyle received that his silence would not be used against him.

Moreover, as we have pointed out, unlike in *Doyle*, petitioner did not take the stand. Any use of his silence was as substantive evidence against him, a use that even the *Doyle* dissenters would have decried. This case can not fall under the exception of a defendant using the fifth amendment as a shield for perjury because the defendant never took the stand. His experts likewise did not place his conduct at the time of his arrest directly in issue in the opinions they expressed.[9]

[3] We now turn to the question of whether the prosecutor's argument constituted harmless error. We must find a constitutional error harmless beyond a reasonable doubt before we can affirm the district court's denial of the writ. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The prosecutor relied strongly on the petitioner's conduct as evidence of sanity; his closing argument was not lengthy and the portion challenged here was not minor. We cannot say that the error was harmless beyond a reasonable doubt.

The judgment of the district court is reversed. On remand, the district court shall issue the writ, calling for the state to retry the petitioner within a reasonable time (to be determined by the district court) or to discharge him.

REVERSED, with instructions.

9. We do not determine, here, if or when such silence might appropriately be used to impeach on cross-examination a defense psychiatrist who raised the defendant's behavior with police at the time of or after his arrest and *Miranda* warning as evidence of insanity. We note only that this issue is not presented in this case.

**James C. TREZEVANT, Plaintiff-Appellant,**

v.

**CITY OF TAMPA, a municipal corporation, et al., Defendants-Appellees.**

**James C. TREZEVANT, Plaintiff-Appellee,**

v.

**CITY OF TAMPA, a municipal corporation, Hillsborough County Board of Criminal Justice, et al., Defendants-Appellants.**

**Nos. 83-3370, 83-3038.**

United States Court of Appeals, Eleventh Circuit.

Sept. 6, 1984.

Rehearing and Rehearing En Banc Denied Oct. 11, 1984.

Motorist cited for traffic violation brought civil rights action against municipality and county board of criminal justice under civil rights statute, alleging that his incarceration during booking process, even though at all times he had sufficient cash on hand to post bond, was an unconstitutional deprivation of his right to liberty. The United States District Court for the Middle District of Florida, William J. Castagna, J., entered judgment on a jury verdict in favor of motorist, and municipality and county board appealed. Motorist cross-appealed amount of attorney fees awarded. The Court of Appeals, Fay, Circuit Judge, held that: (1) evidence was sufficient to support verdict in favor of motorist; (2) award of $25,000 was not excessive; and (3) trial court properly severed time spent on unsuccessful counts from attorney fee award and properly refused to enhance fee award.

Affirmed.

**1. Civil Rights ⚷13.13(3)**

Evidence that motorist cited for traffic violation was incarcerated for 23 minutes during booking process, even though he had never been arrested and at all times had sufficient cash on hand to post bond pending court disposition of citation, was sufficient to support finding that municipality employing officer who cited motorist and county board of criminal justice, which operated facility in which motorist was incarcerated, had unconstitutionally deprived motorist of his right to liberty. 42 U.S.C.A. § 1983.

**2. Civil Rights ⚷13.7**

Municipality may be liable under civil rights statute for an unconstitutional deprivation when deprivation is visited pursuant to government "custom" even though such custom has not received formal approval through body's official decision making channels.

**3. Civil Rights ⚷13.7**

Official policy or custom of a municipality must be moving force of constitutional violation before civil liability will attach to municipality under civil rights statute. 42 U.S.C.A. § 1983.

**4. Civil Rights ⚷13.13(3)**

Evidence, including facts that municipal police officer who cited motorist for traffic violation escorted motorist to central booking and that county deputies then processed motorist in normal course of business and in accordance with what they considered to be governmental policy, was sufficient to support finding that motorist's unconstitutional incarceration during booking process, even though motorist at all times had sufficient cash on hand to post bond, was result of an official policy, thus rendering both municipality and county board of criminal justice liable to motorist for unconstitutional deprivation of right to liberty. 42 U.S.C.A. § 1983.

**5. Civil Rights ⚷13.17(6)**

Jury verdict of $25,000 in favor of motorist who was unconstitutionally deprived of his liberty when incarcerated during booking process following citation for traffic violation was not excessive in view of evidence of motorist's back pain during period of incarceration and jailor's refusal to provide medical treatment, as well as fact that motorist was clearly entitled to compensation for incarceration itself and for mental anguish that he had suffered from entire episode. 42 U.S.C.A. § 1983.

**6. Civil Rights ⚷13.17(18)**

In determining appropriate attorney fee award under civil rights attorney fees statute, trial court properly severed time spent on unsuccessful counts, except to extent that such time overlapped with related successful counts, and properly refused to enhance award. 42 U.S.C.A. § 1988.

Robert V. Williams, Tampa, Fla., for James C. Trezevant.

Chris W. Altenbernd, Tampa, Fla., for defendants-appellees in No. 83-3370.

Bernard C. Silver, Asst. City Atty., Tampa, Fla., City of Tampa.

Donald G. Greiwe, Chris W. Altenbernd, Tampa, Fla., for Hillsborough County Bd. of Criminal Justice.

(76)

Appeals from the United States District Court for the Middle District of Florida.

Before FAY, VANCE and HATCHETT, Circuit Judges.

FAY, Circuit Judge:

In Florida a motorist who receives a traffic citation may sign a promise to appear or post a bond pending court disposition. Mr. Trezevant elected to post a bond, had the necessary cash with him to do so, but found himself in a holding cell behind bars. Feeling that such a procedure deprived him of his civil rights (to remain at liberty), he brought this action. The jury agreed with his contentions and we affirm.

This matter was tried before the Honorable William J. Castagna, United States District Court, Middle District of Florida, beginning on October 20, 1983. The amended complaint then before the trial court contained four counts. Count I charged that the City of Tampa and Officer Eicholz deprived Mr. Trezevant of his civil rights by improperly arresting him. Count II similarly charged the Hillsborough County Board of Criminal Justice ("HBCJ") and Deputy Edwards with improperly incarcerating Mr. Trezevant. Counts III and IV were included as pendent common law and state law claims against the same defendants. Count III was voluntarily dismissed by the plaintiff and Count IV was disposed of on a motion for directed verdict against the plaintiff.[1] The jury returned a verdict of $25,000 in favor of the plaintiff and against the HCBJ and the City of Tampa. The individual defendants were absolved of all liability.

The case is now before this court on cross appeals pursuant to 28 U.S.C. § 1291. Mr. Trezevant has appealed the amount of attorney's fees awarded to him and the City of Tampa and the HBCJ have appealed the judgment against them. The parties have raised multiple issues on appeal but we find that a determination of three is dispositive of the entire matter. These three issues are whether the evidence supports the verdict rendered by the jury; whether the amount of the verdict rendered is excessive; and whether the trial court erred in the amount of attorney's fees awarded pursuant to 42 U.S.C. § 1988.

## FACTS

On the morning of April 23, 1979, the plaintiff, James C. Trezevant, was en route from his home in northwest Hillsborough County to his office in central Tampa. When he reached the intersection of Habana Avenue and Columbus Drive he stopped for a red light, he was third in line at the intersection. When the light changed, Mr. Trezevant and the two cars in front of him proceeded through the intersection. Just south of the intersection the other two cars came to a sudden stop and turned into a parking lot. In order to avoid a collision, Mr. Trezevant came to a screeching halt. Having avoided an accident, he then proceeded on. Six or seven blocks later, Mr. Trezevant was stopped by Officer Eicholz of the Tampa police department and was issued a citation for reckless driving.[2] Officer Eicholz explained to Mr. Trezevant that if Trezevant did not sign the citation he would have to post a bond. Mr. Trezevant elected to go to central booking and post a bond.

Central booking has two entrances. In 1979, one of the entrances was used by bail bondsmen and lawyers to post bail bonds. Through a series of halls, this entrance leads to a glass window adjacent to the central booking desk. The only other entrance was used by policemen who were taking arrestees to be booked. This second entrance opened into a large room adjacent to the booking desk. Officer Eicholz escorted Mr. Trezevant to central booking and when they arrived he frisked Mr. Trezevant and took him through the door normally used by policemen with arrestees in custody. Officer Eicholz walked up to the central booking desk and presented the jailer on duty with Mr. Trezevant and with the citations that Mr. Trezevant had refused to sign. The jailer took Mr. Trezevant's valuables and his belt and shoes and placed Mr. Trezevant in a holding cell until he could be processed. Mr. Trezevant was in the holding cell for a total of twenty-three minutes.

Mr. Trezevant always had enough cash to bond himself out. No one ever told Mr. Trezevant what he was being incarcerated for; he was not allowed to call an attorney before he was incarcerated; and, he was incarcerated with other persons who were under arrest for criminal violations. Further, while he was being held in the holding cell, Mr. Trezevant suffered severe back pain and his cries for medical assistance were completely ignored.

Mr. Trezevant's complaint centers around the fact that he was incarcerated for a civil infraction. It is true that because Mr. Trezevant could not produce his vehicle registration he could have been arrested. However, it is also true that no one ever thought that Mr. Trezevant was not the owner of the car he was driving. The only reason that he was escorted to central booking was that he had elected to post a bond for the civil infraction of reckless driving. Officer Eicholz consistently maintained that he did not arrest Mr. Trezevant.

## SUFFICIENCY OF THE EVIDENCE

The City of Tampa and the HBCJ contend that the trial court erred in failing to grant a directed verdict in their favor. A directed verdict decides contested substantive issues as a matter of law, thus we apply the same standard as was applied by the district court:

> Courts view all the evidence, together with all logical inferences flowing from the evidence, in the light most favorable to the non-moving party. . . .
>
> ". . . [I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury."

*Neff v. Kehoe*, 708 F.2d 639 (11th Cir.1983) (*quoting Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969)).

Applying this standard to the case at bar, the City of Tampa and HBCJ would have us find that there was no evidence of a policy that caused the deprivation of the plaintiff's rights. They would each have us look at their actions in this matter individually. The City of Tampa contends that Officer Eicholz properly escorted Mr. Trezevant to central booking and turned him over to HBCJ for processing. The City argues that once Officer Eicholz reached the booking desk and handed the citations to the deputy on duty, the City was absolved of all further responsibility. Even though Officer Eicholz was present and observed that Mr. Trezevant was being incarcerated, the City believes that Officer Eicholz had no responsibility to object to the incarceration.

The HBCJ, on the other hand, argues that it did nothing wrong because all that its personnel did was accept a prisoner from Officer Eicholz on citations that were marked for arrest.[3] The HBCJ would have us hold that their deputy did not do anything wrong because he believed in good faith that Mr. Trezevant was under arrest and that the deputy had no obligation to make any inquiry of Officer Eicholz concerning Mr. Trezevant's status. We cannot agree with either the city or the HBCJ.

The United States Court of Appeals for the Fifth Circuit has recently dealt with a similar legal issue. In *Garris v. Rowland*, 678 F.2d 1264 (5th Cir.1982), a warrant was issued and Mr. Garris was arrested even though a follow-up investigation prior to

1. This ruling has not been appealed.

2. Officer Eicholz issued a total of three citations: (1) reckless driving, (2) failure to produce a motor vehicle registration certificate, and (3) refusal to sign a traffic citation. The parties agreed that the third citation was a nullity there being no such offense.

3. Some confusion surrounds the three citations. The jury could have concluded that Officer Eicholz had not completed the citations until after Mr. Trezevant was placed in the holding cell. The check showing that Mr. Trezevant had been arrested was apparently a mistake.

Mr. Garris' arrest had revealed that the charges against Mr. Garris were without substance. The Court found that while the City of Fort Worth Police Department had a policy that required follow-up investigations by a second police officer, there was no policy to coordinate the follow-up investigations with the original investigation so as to prevent the arrest of innocent people:

> There was no policy or method providing for cross-referencing of information within the department to prevent 'unfounded' arrests such as occurred here, nor was there a policy providing for the follow-up investigator ... to check with the original investigator ..., who in this case was aware of Rowland's intention to arrest Garris and could have prevented such action. In summary, the record establishes that during this entire police operation, leading up to Garris' unlawful arrest, numerous mistakes occurred, all of which resulted from various officers carrying out the policies and procedures of the Fort Worth Police Department.

*Garris,* 678 F.2d at 1275. We find this reasoning to be persuasive.

[1] In the case at bar, Mr. Trezevant's incarceration was the result of numerous mistakes which were caused by the policemen and deputies carrying out the policies and procedures of the City of Tampa and the HBCJ. There was certainly sufficient evidence for the jury to find, as it did, that pursuant to official policy Officer Eicholz escorted Mr. Trezevant to central booking where he was to be incarcerated until the HBCJ personnel could process the paper work for his bond. We cannot view the actions of Officer Eicholz and the jailer in a vacuum. Each was a participant in a series of events that was to implement the official joint policy of the City of Tampa and the HBCJ.[4] The failure of the procedure to adequately protect the constitutional rights of Mr. Trezevant was the direct result of the inadequacies of the policy established by these defendants. The trial court correctly denied the motions for directed verdict and submitted the case to the jury.

[2, 3] In *Gilmere v. City of Atlanta,* 737 F.2d 894 (11th Cir.1984), this court explained that a municipality may be liable under 42 U.S.C. § 1983 (1982) if unconstitutional action is taken to implement or execute a policy statement, ordinance, regulation or officially adopted and promulgated decision. *Gilmere* at 901. Liability may also attach where the unconstitutional deprivation is "visited pursuant to government 'custom' even though such custom has not received formal approval through the body's official decision making channels." *Gilmere* at 901 (quoting *Monell v. Department of Social Services,* 436 U.S. 658, at 690–91, 98 S.Ct. 2018 at 2035–36, 56 L.Ed.2d 611, *rev'g in part Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). However, the "official policy or custom must be the moving force of the constitutional violation" before civil liability will attach under § 1983. *Gilmere,* 737 F.2d at 901 (*quoting Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981)).

[4] In *Gilmere,* the plaintiff based her claim on the theory that the constitutional deprivation was the result of official custom; she made no claim that it was the result of official policy. However, our court found that the evidence conclusively showed that the municipal defendant had no official custom that caused the alleged constitutional deprivation. In the case at bar, however, there was sufficient evidence for the jury to find that Mr. Trezevant's unconstitutional incarceration was the result of an official policy. Officer Eicholz escorted Mr. Trezevant to central booking and the HBCJ deputies then processed Mr. Trezevant in the normal course of business and in accordance with what they considered to be governmental policy. The fact that no motorist prior to Mr. Trezevant had elected to not sign a citation but rather post a bond is hardly justification for having no procedure. The record is devoid of any explanation as to why Mr. Trezevant was not allowed to use the entrance and window routinely used by attorneys and bondsmen. The imposition of liability on these municipal defendants is in full compliance with the standards explained in *Gilmere.*

4. The City of Tampa was one member of the group that supervised the HBCJ.

## THE AMOUNT OF THE AWARD

The defendants have also challenged the amount of the award and contend that the amount is excessive. The standard for review of this issue was stated in *Del Casal v. Eastern Airlines, Inc.,* 634 F.2d 295 (5th Cir. Unit B 1981):[5]

> In order for an award to be reduced, 'the verdict must be so gross or inordinately large as to be contrary to right reason.' *Machado v. States Marine-Isthmian Agency, Inc.,* 411 F.2d 584, 586 (5th Cir. 1969). The Court 'will not disturb an award unless there is a clear showing that the verdict is excessive as a matter of law.' *Anderson v. Eagle Motor Lines, Inc.,* 423 F.2d 81, 85 (5th Cir. 1970). The award, in order to be overturned must be 'grossly excessive' or 'shocking to the conscience.' *La-Forest v. Autoridad de las Fuentas Fluviales,* 536 F.2d 443 (1st Cir.1976).

[5] There was evidence of Mr. Trezevant's back pain and the jailer's refusal to provide medical treatment and Mr. Trezevant is certainly entitled to compensation for the incarceration itself and for the mental anguish that he has suffered from the entire episode. This award does not "shock the court's conscience" nor is it "grossly excessive" or "contrary to right reason." Finally, there is no indication that the jury considered this amount to be punitive as opposed to compensatory.

## ATTORNEY'S FEES

[6] Mr. Trezevant has challenged the trial court's determination to sever the time spent on the unsuccessful counts from the fee award and its determination not to enhance the fee award. In the order on fees, the trial court expressly considered the various factors delineated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), and also found that the pendent claims had been "clearly without merit".

The United States Supreme Court has recently interpreted 42 U.S.C. § 1988. It held:

> [T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983).

The trial court correctly recognized that the fee award should exclude the time spent on unsuccessful claims except to the extent that such time overlapped with related successful claims. The court then excluded the time spent on the unsuccessful claims because those claims were clearly without merit. Finally, the court considered the award in light of the work performed in this case and found that the award was a reasonable fee for the services performed. We find that the trial judge correctly applied the law and did not abuse his discretion.

## CONCLUSION

For the reasons stated, we find that the jury verdict was supported by sufficient

5. Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* Ala., 661 F.2d 1206 (11th Cir.1981). *Del Casal* was decided on January 16, 1981, and, so, is binding precedent in the Eleventh Circuit.

evidence; the verdict was not excessive; and, the trial court did not abuse its discretion in setting the attorney fee award. Accordingly, the judgment of the district court is AFFIRMED. **Trezevant v. City of Tampa**, Cite as 741 F.2d 336 (1984).

79

80

FILED SEP 24 1992 AT 8:30 ........ M WILLIAM T. WALSH CLERK

# United States District Court

District of New Jersey

UNITED STATES OF AMERICA
V.
RICHARD JEFFERSON
(Name of Defendant)

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number: 91-266

Michael Robbins, Esq.
Defendant's Attorney

THE DEFENDANT:

[xx] pleaded guilty to count(s) Count 2 and Count 4
[ ] was found guilty on count(s) ____ after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18:2113(d) | Bank Robbery | 5/30/91 | 2 |
| 18:2113(a) (d) 924 (c) | Possession of a firearm in the Commission of a Bank Robbery | 5/30/91 | 4 |

The defendant is sentenced as provided in pages 2 through 4 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ] The defendant has been found not guilty on count(s) ____ and is discharged as to such count(s).

[XX] Count(s) one (is)(are) dismissed on the motion of the United States.

[ ] It is ordered that the defendant shall pay a special assessment of $ 100.00, for count(s) 2 and 4, which shall be due [XX] immediately [ ] as follows:

IT IS FURTHER ORDERED that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: 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

Defendant's Date of Birth: 3/18/66

Defendant's Mailing Address:

2718 North Fenwick Ave.
Baltimore, MD

Defendant's Residence Address:

September 9, 1992
Date of Imposition of Sentence

[signature]
Signature of Judicial Officer

Hon. H. Lee Sarokin
Name & Title of Judicial Officer

Sept 24, 1992
Date

Defendant: RICHARD S. JEFFERSON
Case Number: 91-266

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 210 months. This term consists of 150 months on count 2 and 60 months on count 4, which is to run consecutive to the sentence imp on count 2.

☐ The court makes the following recommendations to the Bureau of Prisons:

xx The defendant is remanded to the custody of the United States marshal.
☐ The defendant shall surrender to the United States marshal for this district,
- ☐ at ________ a.m. p.m. on ________________.
- ☐ as notified by the United States marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons,
- ☐ before 2 p.m. on ________________.
- ☐ as notified by the United States marshal.
- ☐ as notified by the probation office.

## RETURN

I have executed this judgment as follows:

________________________________________

Defendant delivered on ____________ to ________________________ at ________________________, with a certified copy of this judgment.

________________________
United States Marshal

By ________________________
Deputy Marshal

## SUPERVISED RELEASE

82

Upon release from imprisonment, the defendant shall be on supervised release for a term of 5 yrs. This term consists of 5 years on count 2 and 3 years on count 4, to run concurrent to each other.

While on supervised release, the defendant shall not commit another federal, state, or local crime and shall n illegally possess a controlled substance. The defendant shall comply with the standard conditions that have bee adopted by this court (set forth below). If this judgment imposes a restitution obligation, it shall be a condition supervised release that the defendant pay any such restitution that remains unpaid at the commencement of th term of supervised release. The defendant shall comply with the following additional conditions:

☒ The defendant shall report in person to the probation office in the district to which the defendant is release within 72 hours of release from the custody of the Bureau of Prisons.

☐ The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release

☐ The defendant shall not possess a firearm or destructive device.

The defendant shall refrain from the illegal possession and/or use of drug and shall submit to urinalysis or other forms of testing to assure compliance. It is further ordered that the defendant shall submit to drug treatment on an outpatient or inpatient basis as directed by the U.S. Proba Office. The defendant shall abide by the rules of the program and shall remain in treatment until satisfactorily discharged with the approval of th U.S. Probation Office.

## STANDARD CONDITIONS OF SUPERVISION

**While the defendant is on supervised release pursuant to this judgment, the defendant shall not commit another federal, state or local crime. In addition:**

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer within 72 hours of any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

## STATEMENT OF REASONS

☐ The court adopts the factual findings and guideline application in the presentence report.

OR

☒ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary): The court, via upward departure, finds a criminal history category of V

**Guideline Range Determined by the Court:**

Total Offense Level: 28

Criminal History Category: V

Ct. 2 Imprisonment Range: 130 to 162 months — plus mandatory 60 months consecutive on count 4; Ct. 2 1-5 years; Ct. 4 1-3 years

Supervised Release Range: ____ to ____ years

Fine Range: $ 15,000 to $ 150,000

☒ Fine is waived or is below the guideline range, because of the defendant's inability to pay.

Restitution: $ N/A

☐ Full restitution is not ordered for the following reason(s):

☐ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by application of the guidelines.

OR

☐ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

OR

The sentence departs from the guideline range

☐ upon motion of the government, as a result of defendant's substantial assistance.

☒ for the following reason(s): see sentencing transcript (attached)

NSN 7540-00-634-4178

84

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

EX-B7

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|---|---|
| 5/9/03 1000 | Adm. Note: Transfer from SCH |
| | Dx: HTN, Seizures. Multiple medical complaints - ? how many fictious. |
| | Question use of Gabapentin unsure if pain controller seizure control. |
| | Rx: Gabapentin 100mg II caps TID (PILL LIN |
| | Lisinopril 10mg I QAM |
| | Dilantin 100mg I BID X 30 days. |
| | Naproxen Sodium 275mg I BID |
| D. WOLKE RPH | Need to be seen by primary care provider |
| | Instructed to sign up S/C on Monday 5/12/03 |
| | W/C, Crutches, back brace. Slip given for 30 days or until seen by PA |
| | Cancel Ex 30 days until evaluated |
| | Need to obtain consent from S.C. re Gabapentin. |
| | ROBERT MIGLIORINO, D.O. D. Spotts LPN D. SPOTTS LPN |
| 5-15-03 1435H | S: Pt state that in 1991 when first incarcerated was beaten in Hudson Co. Jail and state was hospitalized. When went to Court transferred to Union Co. Jail and was beaten day (cont'd) |

PATIENT'S IDENTIFICATION (Use this space for Mechanical Imprint)

He tried escaping there

TAKE JUDICIAL NOTICE

RECORDS MAINTAINED AT: FCI-Allenwood, PO Box 2500, White Deer

PATIENT'S NAME (Last, First, Middle initial): Jefferson Leonard

SEX

RELATIONSHIP TO SPONSOR | STATUS | RANK/GRADE

SPONSOR'S NAME | ORGANIZATION

LIMITED OFFICIAL USE

DEPART./SERVICE | SSN/IDENTIFICATION NO. 14921-050 | DATE OF BIRTH

Flip Mode J. N.

(Copy this side) 85

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|---|---|
| 5-15-03 (Cont'd) | Then was transferred to MCC-NY where he claims came in with a cane, 1992. It was there that he started falling out and shaking. He was started on medication: dilantin. He went back and forth until 1993 bet. MCC and OTV. Then they transferred him to Rahway State Prison in NJ where he was until 3-4-03 that he became a federal inmate. |
| | Pt states he feels the floor "shaky" and falls out - reason why goes on wheelchair more than crutches. Pt states has had MRI but no EEG - doesn't know why he has seizures. |
| | O: Pt in wheelchair, was able to sit on examining table c difficulty. Very difficult to examine due to pain and "shooting electricity". When asked to go to examining table was the first observed pt made jerky movement c (R) arm. (R) knee: (+) surgical scars. X-Ray of 4/03 shows screw. |
| | B/P 120/68 P=78/min |
| | Heart ∅ murmur ∅ arrythmia Lungs: CTA B/L. |
| | A: (1) Seizure Disorder (2) Hx of Radiculopathy (3) Dermatitis |
| | O: Inner elbows (+) liquen type rash (+) excoriation |
| | P: (1) HC 1% #1 aaa bid. |
| | (2) Lidex Cr. #1 aaa bid. |
| | (3) Benadryl 25mg i BID x 20days. |
| | Pt educ. on plan. Discussed c CMO. EEG ordered. |
| | F. Terrero Leibel / F. TERRERO |

Oesterleich, BPh FCI Allenwood

LEIBEL F.

U.S. Department of Justice
Federal Bureau of Prisons

Medical Treatment Refusal
(Rechazo de Tratamiento Médico)

189

EX-B12

Date (Fecha) 5-22-03

I, Jefferson, Richard # 14921-050 (Name and Registration Number) (Numbre y Número de Registro), refuse treatment recommended by the Federal (rechaza el tratamiento recomendado por el Personal Bureau of Prisons Medical staff for the following condition(s): Médico del Bureau Federal de Prisiones, por las siguientes razones):

DESCRIBE IN LAYMAN'S TERMINOLOGY: (DESCRIBA EN TERMINOLOGIA COMUN Y CORRIENTE):

Seizure Disorder ? secondary to head trauma ?

The following treatment(s) was/were recommended: (El siguiente tratamiento(s) fue/fueron recomendado(s)):

Dilantin 100mg ī BID

Federal Bureau of Prisons Medical staff members have carefully explained to me that the following possible consequences and/or complications may result because of my refusal to accept treatment:

(Los miembros del personal Médico del Bureau Federal de Prisiones me ha explicado cuidadosamente las posibles consecuencias o complicaciones siguientes que pueden resultar por causa de mi rechazo a aceptar tratamiento):

detremental condition of seizure that could lead to injury and even death.

I understand the possible consequences and/or complications, listed above, and still refuse recommended treatment. I hereby assume all responsibility for my physical and/or mental condition, and release the Bureau of Prisons and its employees from any and all liability for respecting and following my expressed wishes and directions.

(Me doy por enterado de las posibles consecuencias o complicaciones enlistadas arriba, y aun así me rehuso al tratamiento recomendado. Por medio de la presente, asumo toda responsabilidad por mi condición física o mental, y relevo al Bureau de Prisiones y a sus empleados de cualquiera y toda responsabilidad por cause de respectar y seguir mis expresos deseos y direcciones.)

[signature] Patient's Signature and Date (Firma del Paciente y Fecha)

F. Ternero Leibel / F. TERRERO LEIBEL PA.
Signature of Witness and Date (Firma del Testigo y Fecha)

**SENSITIVE**

LIMITED OFFICIAL USE

Signature of Witness and Date (Firma del Testigo y Fecha)

Original – Inmate's Medical Record
Canary – Hospital File
Pink – To Inmate

USP LVN

Previous editions not usable

BP-358(60)
MAY 1985



(87)

DERAL CORRECTIONAL INSTITUTION
ALLENWOOD, PENNSYLVANIA

## LESCENT AND CHANGE IN WORK CLASSIFICATION STATUS

UNIT: 14921-050 DATE: 4-9-04

on, Richard DETAIL: Facilities REG. NO. 14921-050

*nmate named above has been authorized the work and/or activity status listed below the reason(s) and the time shown.*

**STATUS: (Check one and answer questions)**

stricted activity for medical reasons. THRU 12 MIDNIGHT ______ 20 ___

act restriction. No prolonged Standing, over 10 minutes THRU 12 MIDNIGHT ______ 20 ___

THRU 12 MIDNIGHT indef. 20 ___

Miranda, PA-C
Physician or Physician Assistant

## DEFINITIONS AND INSTRUCTIONS

exceed three days duration including weekends and holidays. Restricted to room except for meals, barbering, religious No recreation activity.

od for operation, injury, or serious illness. Not less than four days and not to exceed thirty days, subject to renewal. ipate in any recreational activities outside the unit.

ific activities because of physical or mental handicap. List handicap, work limitation and time period, either specific date

e and unassigned because of mental or physical reasons. Condition generally expected to last indefinitely.

88

FEDERAL CORRECTIONAL INSTITUTUION GILMER
GLENVILLE, WV

IDLE, CONVALESCENT AND CHANGE IN WORK CLASSIFICATION STATUS

TO: ALL CONCERNED

INMATE'S NAME: Jefferson, Richard UNIT: A2 DATE: 9/15/04

DETAIL: REG. NO.: 14921-050

MEDICAL CLASSIFICATION STATUS: (Check one)

( ) IDLE: THRU 12 MIDNIGHT ________, 20___

( ) CONVALESCENT: THRU 12 MIDNIGHT ________, 20___

( ) RESTRICTED DUTY: THRU 12 MIDNIGHT ________, 20___

(X) OTHER: Please allow use of wheel chair indefinite

[signature] Lietty PA

Physician or Physician Assistant

IDLE STATUS - Temporary disability not to exceed three days duration. Restricted to room except for meals, religious services, sick call. No recreation activity.

CONVALESCENT STATUS - Recovery period for operation, injury, or serious illness. Full institutional privileges and limited recreational privileges, subject only to medical limitation.

RESTRICTED DUTY - Restricted from work around machinery, heights, heavy lifting, sports activites, etc., because of physical or mental handicap. List handicap, limitation and time period.

Distribution: Medical Records, Medical Records Staff, Unit Officer, Inmate, Control Center.

89

U.S. Department of Justice
Federal Bureau of Prisons

United States Penitentiary - Big Sandy

P.O. Box 2067
Inez, KY 41224

May 22, 2006

**MEMORANDUM FOR JEFFERSON, RICHARD**
**REG #14921-050**

**FROM:** **Diane Smith, Associate Warden Operations** (handwritten: V. Apple A/w)

**SUBJECT:** Inmate Request to Staff Response

This is in response to your Inmate Request to Staff in which you request a stress test in order to identify the cause of the black-outs you have been experiencing.

Research into the matter reveals that you have been seen by Health Service staff upon numerous occasions since your arrival to USP Big Sandy on February 27, 2006. On March 2, 2006, you were seen by a physician who diagnosed you with hypertension, degenerative joint disease, depression, and seizures. You were prescribed numerous medications for treatment of these conditions, the majority of which you were taking at your previous institution. On April 6, 2006 you were seen by a second physician who concurred with the previous diagnosis and, therefore, made no change to your treatment regimen. On April 20, 2006, you were seen by the physician who saw you initially and he continued with the same diagnosis and medications. During each visit, the black-out episodes were addressed but neither physician felt it necessary to refer you for further testing. Each physician has felt the episodes were directly related to the above diagnosis.

I feel your symptoms and medical conditions are being treated appropriately. If you have further medical concerns, you can address them during the routine sick call process.

[Exhibit to untimely remedies
I did not arrive at BSY 2-7-06;
A.W. Smith, herein, reflects arrival
at 2-27-06.]

90

F.C.I. BECKLEY
BECKLEY, WEST VIRGINIA, 25832

**IDLE, CONVALESCENT AND CHANGE IN WORK CLASSIFICATION STATUS**

TO: ALL CONCERNED

INMATE'S NAME: Jefferson, Richard UNIT: Pine Alley DATE: 5-22-07
DETAIL: VT REG. NO.: 11921-050

**MEDICAL CLASSIFICATION STATUS: (Check One)**

( ) IDLE: ______

( ) CONVALESCENT: ______ THRU 12 MIDNIGHT ______, 20__

( ) RESTRICTED DUTY: ______ THRU 12 MIDNIGHT ______, 20__

( ) MEDICALLY UNASSIGNED: Allow to wear right and left carpal tunnel wrist braces issued 5-22-07 THRU 12 MIDNIGHT ______, 20__

[signature] PAC S. Rose PAC FCI Beckley

Physician or Physician Assistant

IDLE STATUS – Temporary disability not to exceed three days duration including weekends and holidays. Restricted to room except for meals. No recreation activity.
CONVALESCENT STATUS – Recovery period for operation, injury, or serious illness. Not less than four days and not to exceed thirty days. Excused from work with no recreation activities.
RESTRICTED DUTY – Restricted from specific activities because of physical condition. List condition, work limitation, and time period.
MEDICALLY UNASSIGNED – Unassigned due to existing medical condition.

LVN-20-F